| | |
|---|---|
| VINCENT SIPE,<br><br>       Plaintiff,<br><br>   v.<br><br>COUNTRYWIDE BANK; SIERRA PACIFIC MORTGAGE COMPANY, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; FINANCIAL ADVANTAGE, INC. DBA : SILVERSTON REALTY; JOHN DANIEL NORBERG; CAROL DESILVA and DOES 1-20 inclusive,<br><br>      Defendants. | 09-CV-00798-OWW-DLB<br><br>MEMORANDUM DECISION AND ORDER RE: (1) DEFENDANT SIERRA PACIFIC MORTGAGE COMPANY INC.'S MOTION TO DISMISS; and (2) DEFENDANTS COUNTRYWIDE BANK AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS |

## I. INTRODUCTION

Before the court are two motions to dismiss. One motion is brought by Defendant Sierra Pacific Mortgage Company Inc. ("Sierra Pacific") and another is brought collectively by Defendants Countrywide Bank ("Countrywide") and Mortgage Electronic Registration Systems, Inc. ("MERS"). The motions are directed at the claims asserted by Plaintiff Vincent Sipe ("Plaintiff") in his First Amended Complaint ("FAC" or "complaint"). The following background facts are taken from the FAC and other documents on file in this case.

## II. BACKGROUND

### A. General Background

This is a mortgage fraud case concerning Plaintiff's residential property located in Coarsegold, California. On or about May 2006, Defendant Carol Desilva, a loan officer for Defendant Financial Advantage Inc., approached Plaintiff about a

refinance loan on his residence. Desilva "advised" Plaintiff that she could get the "best deal" and the "best interest rates" on the market. Plaintiff applied for the loan, and he accurately described his income and provided Desilva with income-related documentation, including income bank statements, W-2s, and 1099s. On Desilva's loan application, however, Plaintiff's monthly income was "fraudulently overstated." Desilva advised Plaintiff that Desliva could get him 100% financing for his residence and that his loan would be fixed for thirty (30) years at a 2.15% interest rate. Desilva, however, actually sold Plaintiff a five-year fixed loan with an adjustable rate rider. Defendant Sierra Pacific served as the lender.

On or about May 11, 2006, Plaintiff completed the loan on his property. The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the property. The Deed of Trust identified Sierra Pacific as the lender and MERS as the lender's nominee and beneficiary.

Plaintiff, allegedly, was not given a copy of "any of the loan documents prior to closing." At the closing, Plaintiff was only given a few minutes to sign the documents and was not "allowed to review them." Plaintiff also did not receive "the required copies of a proper notice of cancellation." Plaintiff now wants to rescind the loan.

Plaintiff asserts that his loan was part of a larger "scheme" perpetrated by "Defendants" pursuant to which they sold home loans on the "secondary market." Once on the secondary market, "Defendants" allegedly "pooled" these loans into trusts and issued new securities backed by the pool. As part of this scheme, Sierra

Pacific's borrowers, including Plaintiff, "were steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers . . . were not qualified to obtain."

**B.    Procedural History And Plaintiff's Claims**

Plaintiff filed an initial complaint on May 5, 2009. (Doc. 1.) The initial complaint included claims for a violation of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq.   In August 2009, Defendant Sierra Pacific filed a motion to dismiss Plaintiff's initial complaint.   In response, Plaintiff filed a FAC.

In the FAC, Plaintiff asserts causes of action for: (1) a violation of TILA; (2) a violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 et seq.; (3) negligence; (4) a violation of RESPA; (5) breach of fiduciary duty; (6) fraud; (7) a violation of California Business and Professions Code § 17200 et seq.; (8) breach of contract; and (9) breach of the implied covenant of good faith and fair dealing.

After Plaintiff filed his FAC, Sierra Pacific filed a motion to dismiss, and Countrywide and MERS also filed a separate motion to dismiss.   In the FAC, federal question jurisdiction is invoked by the TILA and RESPA claims, and supplemental jurisdiction is asserted for the state law claims.

**C.    Defendants' Motions**

Sierra Pacific moves to dismiss all claims against it, raising various arguments as to why each claim is insufficiently pled or legally barred.   Countrywide and MERS move to dismiss the claims against them, raising numerous arguments as to why each claim is

insufficiently pled. With respect to the fraud claim, Sierra Pacific, Countrywide, and MERS argue, among other things, that it fails to meet the pleading requirements of Rule 9(b).

Plaintiff filed untimely opposition briefs to both motions. The hearing date on the motions was continued to permit adequate time for reply briefing.[1]

### III. STANDARDS OF DECISION

A. <u>Motion To Dismiss</u>

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion

_____

[1] Future compliance with the filing deadlines is expected.

**4**

to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).    Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S. Ct. at 1950.    A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).    "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).    "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

**B.    Rule 9(b)**

Rule 9(b) imposes an elevated pleading standard for fraud

claims.  Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . ." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). Allegations of fraud must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* (internal quotation marks omitted).  The "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted).  A plaintiff alleging fraud "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis and internal quotation marks omitted).

## IV.  DISCUSSION AND ANALYSIS

A.  <u>TILA Claim</u>

Plaintiff asserts a TILA claim against Sierra Pacific for damages and rescission.  Sierra Pacific allegedly violated TILA by: "(a) failing to provide required disclosures prior to consummation of the transaction; (b) failing to make required disclosures clearly and conspicuously in writing; (c) failing to timely deliver

to Plaintiff notices required by TILA; (d) placing terms prohibited by TILA into the transaction; and (e) failing to disclose all finance charge details and the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed." (Doc. 14 at 11.)

Sierra Pacific argues that Plaintiff's TILA claim for damages and rescission are both time-barred, and that the complaint fails to allege facts sufficient to demonstrate a right to rescission.

### 1. Damages Claim

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Failure to satisfy TILA's requirements exposes a lender to "statutory and actual damages [that are] traceable to a lender's failure to make the requisite disclosures." *Id*.

A TILA claim for damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Beach*, 523 U.S. at 412. For statute of limitations purposes, the "occurrence of the violation" takes place on the "consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Here, according to the complaint, the transaction was consummated "on or about May 11, 2006." (Doc. 14 at 7.) Plaintiff had until May 2007 to file his TILA claim for damages. Plaintiff, however, filed his TILA claim for damages on May 4, 2009, well past the deadline. (*See* Doc. 1.) Accordingly, Plaintiff's TILA claim for damages is time-barred absent equitable tolling.

7

As explained in *King,* TILA's one-year limitations period may be extended through equitable tolling:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but ... the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

784 F.2d at 915. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000); *see also Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008). "Fairness, without more, is not sufficient justification to invoke equitable tolling . . . ." *Garcia*, 526 F.3d at 466.

Here, Sierra Pacific's failure to make TILA disclosures and alleged misconduct – including its failure to "make required disclosures clearly and conspicuously in writing," and its placement of "terms prohibited by TILA into the transaction" – occurred, if at all, by the time of the loan transaction in May 2006. With the transaction completed and the loan documents in hand, Plaintiff could have reviewed them and discovered whether illegal terms were included in the loan transaction, or whether the disclosures to be included in the transaction were unclear, omitted or otherwise problematic, and then filed suit within the one-year limitations period.

In *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th

Cir. 2003), the court rejected the application of equitable tolling to a TILA damages claim asserted against a lender. The court reasoned:

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The Meyers were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed. The Meyers have produced no evidence of undisclosed credit terms, or of fraudulent concealment or other action on the part of Ameriquest that prevented the Meyers from discovering their claim.

Plaintiff argues equitable tolling should apply because, as alleged, he was not "allowed to review" the loan documents "at closing," they were not explained to him at closing, and he was not given a copy of them prior to closing. (Doc. 14 at 6.) Even assuming this is true, Plaintiff does not explain why immediately after the closing, when he had the loan documents, he could not have reviewed them that same day (or at any point thereafter) and, with or without the assistance of others, discovered the alleged TILA violations.

Plaintiff also argues that equitable tolling should apply because, as alleged, "[t]he facts surrounding this loan transaction were purposely hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents involved therein. Facts surrounding the transaction continue to be hidden from Plaintiff to this day." (Doc. 14 at 7.) This conclusory allegation may relate to the averment in the TILA claim that Sierra Pacific failed to "disclose all finance charge details" and "the annual percentage rate based upon a properly calculated and disclosed finance charges and amounts financed." Plaintiff does not,

9

however, allege what facts were "purposely hidden" from Plaintiff to prevent discovery of his TILA claim.

Plaintiff's allegation that the "facts surrounding this loan transaction were purposely hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents" and "continue to be hidden from Plaintiff to this day" is a legal conclusion, and the complaint does not assert how the "hidden facts" prevented him from discovering the alleged TILA violations or how they relate to the alleged TILA violations committed by Sierra Pacific. Facts sufficient to invoke equitable tolling have not been alleged.

Plaintiff's TILA claim for damages is time-barred absent equitable tolling. Defendant Sierra Pacific's motion to dismiss, on the grounds that this claim is barred by the statute of limitations, is **GRANTED WITH LEAVE TO AMEND**. Plaintiff shall have one opportunity to allege what facts were hidden that prevented him from discovering his claim, and how those hidden facts relate to the TILA violations Sierra Pacific allegedly committed.

### 2. Rescission Claim

Generally, TILA provides that a borrower has until midnight of the third business day following the consummation of the loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. *See Reagen v. Aurora Loan Servs.*, No. 1:09-CV-00839-OWW-DLB, 2009 WL 3789997, at *6 (E.D. Cal. Nov. 10, 2009) (citing 12 C.F.R. §

**226.23(a)(3)).[2]  Section 1635(f) of TILA provides:**

> **An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor.**

**15 U.S.C. § 1635(f).**

Here, the date of loan consummation is on or about May 11, 2006.  Plaintiff filed his TILA rescission claim on May 4, 2009.  Accordingly, Plaintiff's rescission claim is well outside the three-day window but *within* the three-year period *if* the three-year period applies in this case.

Sierra Pacific argues that Plaintiff cannot avail himself of the three-year period because (i) he, in fact, received his notice of his right of rescission and (ii) there are no facts pled in the complaint as to what material disclosures Sierra Pacific failed to make.  As to the rescission notice, Sierra Pacific requests that judicial notice be taken of a document entitled "NOTICE OF RIGHT OF CANCEL."  This document identifies Sierra Pacific as the lender and Plaintiff as the borrower, explains to the reader how to cancel the loan transaction, and bears the purported signature of Plaintiff at the bottom.[3]  Sierra Pacific argues that this document proves that

---

[2]  **Regulation Z provides that "[t]he term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)." 12 C.F.R. § 226.23(a)(3) n.48.**

[3]  **Even assuming it were proper to take judicial notice of this document, and further assuming that doing so would eviscerate any claim that Plaintiff did not receive notice of his rescission**

Plaintiff received the requisite notice regarding his rescission rights.

The issue of whether this document is judicially noticeable, whether Sierra Pacific provided Plaintiff with the requisite notice regarding his right of rescission, and whether Plaintiff has failed to sufficiently plead the failure to make material disclosures, need not be determined. Plaintiff's TILA claim for rescission fails for another reason.

"Plaintiff must allege (subject to Rule 11) an ability to tender in order to state a claim for rescission under TILA and Regulation Z." *Garcia v. Wachovia Mortgage Corp.*, __ F. Supp. 2d __, 2009 WL 3837621, at *5 (C.D. Cal. 2009); *see also Gonzalez v. HomeQ Servicing*, No. 1:09-CV-00951-OWW-SMS, 2010 WL 289303, at *3 (E.D. Cal. Jan. 15, 2010); *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) ("[R]escission should be conditioned on repayment of the amounts advanced by the lender.") (emphasis omitted).[4] "The equitable goal of rescission under TILA is to restore the parties to the status quo ante." *Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 820 (4th Cir. 2007) (internal quotation marks omitted).

The complaint does not allege that Plaintiff has tendered or

_____

rights, this would still not resolve whether Sierra Pacific otherwise failed to provide material disclosures to Plaintiff which would extend the limitations period to three years.

[4] As recognized in *Garcia*, "[b]y far, the majority of Courts to address the issue recently have required that borrowers allege an ability to tender the principal balance of the subject loan in order to state a claim for rescission under TILA." 2009 WL 3837621 at *3.

has the ability to tender the principal balance of the loan. This is required. Absent such allegations, Plaintiff's TILA claim for rescission is subject to dismissal.

Sierra Pacific's motion to dismiss the TILA rescission claim is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

B. RFDCPA Claim

Plaintiff asserts a claim for violation of the RFDCPA, California Civil Code § 1788 et seq., against Countrywide and Sierra Pacific who raise two arguments for dismissal. First, that the RFDCPA, which applies to debt collection activities, does not cover foreclosure-related activities and is not implicated here. Second, that Plaintiff has only generically alleged RFDCPA violations with no facts to support them.

The RFDCPA was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. Under the RFDCPA, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). The term "debt collection" means "any act or practice in connection with the collection of consumer debts," § 1788.2(b), and "consumer debt" means "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," § 1788.2(f). In turn, "consumer credit transaction" means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other

13

person primarily for personal, family, or household purposes." §
1788.2(e). A debt collector violates the act when it engages in
harassment, threats, the use of profane language, false simulation
of the judicial process, or when it cloaks its true nature as a
licensed collection agency in an effort to collect a consumer debt.
*See* Cal. Civ. Code. §§ 1788.10-1788.16.

Plaintiff alleges that Countrywide and Sierra Pacific violated
the RFDCPA by "collecting on a debt not owed to the Defendants,
making false reports to credit reporting agencies, falsely stating
the amount of a debt, increasing the amount of debt by including
amounts that are not permitted by law or contract, and using unfair
and unconscionable means to collect a debt." (Doc. 14 at 13.)[5]
Plaintiff's RFDCPA claim is deficient in at least two respects.

First, "[t]he law is clear that foreclosing on a deed of trust
does not invoke the statutory protections of the RFDCPA." *Collins
v. Power Default Servs., Inc.,* No. 09-4838 SC, 2010 WL 234902, at
*3 (N.D. Cal. Jan. 14, 2010) (collecting numerous cases).
"[F]oreclosure pursuant to a deed of trust does not constitute debt
collection under the RFDCPA." *Castenda v. Saxon Mortgage Servs.,
Inc.*, __ F. Supp. 2d __, 2009 WL 4640673, at *3 (E.D. Cal. 2009);
*see also Gonzalez v. First Franklin Loan Servs.,* No. 1:09-CV-00941
AWI-GSA, 2010 WL 144862, at *7 (E.D. Cal. Jan. 11, 2010)
("[F]oreclosure related actions . . . do not implicate the
RFDCPA."). The conduct Plaintiff complains of concerns foreclosure

---

[5] This conclusory allegation is a verbatim repetition of a
RFDCPA claim in *Sorenson v. Countrywide Home Loans, Inc.*, No.
2:09-cv-01943-MCE-KJM, 2010 WL 308794, at *4 (E.D. Cal. Jan. 12,
2010).

related actions in connection with his residential mortgage. This conduct is not covered by the RFDCPA. For this reason, Plaintiff's RFDCPA claim is subject to dismissal.

Second, the RFDCPA claim lacks any supporting facts. The complaint has no non-conclusory factual content to plausibly suggest that Countrywide and Sierra Pacific violated the RFDCPA by engaging in acts (such as harassment) prohibited by the statute. *See Keen v. Am. Home Mortgage Servicing, Inc.*, __ F. Supp. 2d __, 2009 WL 3380454, at *5 (E.D. Cal. 2009); *Gonzalez*, 2010 WL 144862 at *7.

Defendant Countrywide's motion to dismiss the RFDCPA claim is GRANTED WITH LEAVE TO AMEND.

## C. Negligence Claim

To establish a negligence claim, "it must be shown that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries. The absence of any one of these three elements is fatal to a negligence claim." *Gilmer v. Ellington*, 159 Cal. App. 4th 190, 195 (2008) (internal citation omitted). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004). Defendants principally attack Plaintiff's negligence claim on the ground that nothing is alleged in the complaint which would suggest that they owed a duty to Plaintiff upon which to predicate a negligence claim.

Plaintiff's negligence claim is asserted against Countrywide, MERS, and Sierra Pacific. Plaintiff alleges that Countrywide,

MERS, and Sierra Pacific "owed a duty to the Plaintiff to perform acts in such a manner as to not cause Plaintiff harm." (Doc. 14 at 17.) Defendants allegedly breached this duty "when they failed to maintain the original Mortgage Note, failed to properly create original documents, [and] failed to make required disclosures to the Plaintiff." (*Id.*) Plaintiff further alleges that Countrywide, MERS and Sierra Pacific breached this "duty of care when they took payments to which they were not entitled, charged fees they were not entitled to charge, and made or otherwise authorized negative reporting of Plaintiff's creditworthiness to various credit bureaus wrongfully." (*Id.*) These negligence allegations are identical to those in *Castenda*, 2009 WL 4640673 at *4, there found insufficient to state a claim.

Consistent with his complaint, Plaintiff argues that Defendants had a "general duty not to harm" Plaintiff. In support of this theory, Plaintiff cites *McGarry v. Sax*, 158 Cal. App. 4th 983 (2008), *Giraldo v. Department of Corrections & Rehabilitation*, 168 Cal. App. 4th 231 (2008), and *Peart v. Ferro*, 119 Cal. App. 4th 60 (2004). In *McGarry*, the court noted:

> Under general negligence principles and Civil Code section 1714, a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others. This legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct.

158 Cal. App. 4th at 995. Similarly, the *Giraldo* court recognized that "[a]s a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." 168 Cal. App. 4th at 245 (internal quotation marks

omitted).  Finally, in *Peart*, the court noted that "[u]nder general principles of negligence law, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person."  119 Cal. App. 4th at 70-71 (internal quotation marks omitted).

No issue is taken with these statements on the general duty of care owed to others.  Plaintiff, however, takes these statements out of context.  *McGarry*, *Giraldo* and *Peart* were personal injury cases.  In *McGarry* the plaintiff was injured at a skateboard park, 158 Cal. App. 4th at 987, in *Giraldo* the plaintiff was raped and physically beaten, 168 Cal. App. 4th at 237, and in *Peart* the plaintiff was injured in a watercraft collision, 119 Cal. App. 4th at 65-67 & n.2.  In each of these personal injury cases, the court articulated the general duty of care owed by persons to avoid engaging in conduct that poses an unreasonable risk of personal injury to foreseeable plaintiffs.  This case, by contrast, is *not* a personal injury case.  At most, Plaintiff alleges some sort of generalized "harm" caused by various lending-related activities.  Plaintiff has cited no authority to support the application of the general duty of care in personal injury cases – to avoid engaging in conduct that poses an unreasonable risk of personal injury to foreseeable plaintiffs – to the lending field of commercial law.  As far as the case law reveals, the concept of duty in the lending context is more nuanced than the general duty of care owed in personal injury cases.

"Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except those imposed due to special circumstance."

17

*Resolution Trust Corp. v. BVS Dev.*, 42 F.3d 1206, 1214 (9th Cir. 1994) (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)); *see also Castaneda*, 2009 WL 4640673 at *4 (concluding that a loan servicer owed no duty of care to the plaintiff). Special circumstances arise when the lender "actively participates in the financed enterprise beyond the domain of the usual money lender." *Wagner* v. Benson, 101 Cal. App. 3d 27, 35 (1980) (internal quotation marks omitted). Further, a trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust.*" Wong v. Am. Servicing Co., Inc.*, 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, at *6 (E.D. Cal. Dec. 18, 2009) (alterations in original) (internal quotation marks omitted).

The complaint fails to allege any facts that show special circumstances, such as, that as a lender, Sierra Pacific actively participated in the financed enterprise beyond the realm of the usual money lender, or that Countrywide and MERS, in their respective capacities as servicer and nominee of the trust, actively participated in the financed enterprise "beyond the usual practices associated with the lending business," *Wong*, 2009 WL 5113516 at *6. There are no special circumstances alleged. Under the facts pled, Defendants owed Plaintiff no duty of care. There is no basis for the negligence claim. The moving Defendants' motions to dismiss are GRANTED, and the negligence claim is

**DISMISSED WITH LEAVE TO AMEND.**[6]

**D.    RESPA Claim**

    **1.    Countrywide**

Plaintiff asserts a RESPA claim against Countrywide, alleging that "Defendant Countrywide violated RESPA, 12 U.S.C. § 2605(e)(2), by failing and refusing to provide a proper written explanation or response to Plaintiff's QWR." (Doc. 14 at 15.)  Countrywide argues that this RESPA claim is subject to dismissal because the complaint does not allege facts showing that what Plaintiff sent to Countrywide constitutes a "qualified written request" under RESPA. Countrywide contends that Plaintiff alleges, in conclusory fashion, that he sent a "Qualified Written Request" to Countrywide without alleging any facts to support this legal characterization of the document.  Countrywide is correct.

Section 2605 imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan.  12 U.S.C. § 2605(b).  A loan servicer also has a statutory duty to respond to a borrower's inquiry or "qualified written request." 12 U.S.C. § 2605(e).   More specifically, § 2605(e)(1)(A) requires a loan servicer "who receives a *qualified written request* from the borrower (or an agent of the borrower) *for information relating to the servicing of such loan*" to provide the borrower with a written acknowledgment of receipt within twenty days.

A "qualified written request" is a "written correspondence"

---

[6] At oral argument Plaintiff expressed some doubt about whether he could amend the complaint to state a viable negligence claim, but he still requested leave to amend.  Rule 11 governs.

that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for borrower's belief that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. § 2605(e)(1)(B)(i)-(ii). The term "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(3).

After receiving a qualified written request under § 2605(e)(1)(A), no later than sixty days afterwards, the loan servicer is required to respond by making appropriate corrections to the borrower's account, if necessary, and, after conducting an investigation, providing the borrower with a written clarification or explanation. § 2605(e)(2).

Plaintiff alleges that on or about April 7, 2009, "a Qualified Written Request was mailed to Defendant Countrywide" and it "included a demand to rescind the loan under the TILA provisions." (Doc. 14 at 7.) A demand to rescind the loan is a communication about the validity of the loan and not its servicing. *Wong*, 2009 WL 5113516 at *7. Nothing in the complaint indicates that the written correspondence to Countrywide concerned the servicing of Plaintiff's loan, which is required to qualify the correspondence as a "qualified written request" under RESPA. A conclusory allegation that the correspondence was a "Qualified Written Request" is insufficient. *See Twombly*, 550 U.S. at 555 (mere "labels and conclusions" are insufficient to state a claim); *see*

*also Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).

Similarly insufficient is the complaint's conclusory allegation that, apart from failing to respond to Plaintiff's correspondence, "Defendants," including Countrywide, "engaged in a pattern or practice of non-compliance with . . . § 2605." (Doc. 14 at 15.) There are no facts alleged to support this boilerplate assertion. *See Wong*, 2009 WL 5113516 at *7 (dismissing a similar claim).

The motion to dismiss the RESPA claim against Countrywide is GRANTED and this claim is DISMISSED WITH LEAVE TO AMEND.

## 2. Sierra Pacific

Plaintiff also asserts a RESPA claim against Sierra Pacific. The complaint alleges that Sierra Pacific "violated RESPA at the time of closing of the Loan . . . by failing to correctly and accurately comply with the disclosure requirements." (Doc. 14 at 15.) For several reasons, this claim fails.

First, it is entirely conclusory – there are no facts alleged that explain what information, if any, Sierra Pacific failed to provide at closing. *Blanco v. Am. Home Mortgage Servicing, Inc.*, No. CIV. 2:09-CV-578 WBS DAD, 2009 WL 4674904, at *6 (E.D. Cal. Dec. 4, 2009) (dismissing identical RESPA claim due to conclusory allegation of illegality). Second, to the extent this claim really asserts a violation of § 2603, which requires a standard disclosure at or before "settlement," this section does not create a private right of action. *Lingad v. Indymac Fed. Bank*, No. 2:09-cv-2347, __ F. Supp. 2d __, 2010 WL 347994, at *6 (E.D. Cal. Jan. 29, 2010); *Olivier v. NDEX West, LLC*, No. 1:09-CV-00099 OWW GSA, 2009 WL

2486314, at \*3 (E.D. Cal. Aug. 12, 2009).  Third, the RESPA disclosure provisions that do confer a private right of action do not pertain to disclosures at a loan's closing. *Lingad*, 2010 WL 347994 at \*7.

Plaintiff also alleges that "Defendants," including Sierra Pacific, engaged in a pattern and practice of non-compliance with the requirements of § 2605.  This conclusory allegation is not supported by any other factual allegations and is insufficient to state a claim.

Sierra Pacific's motion to dismiss the RESPA claim against it is GRANTED.  At oral argument, Plaintiff indicated that he did not believe he could amend the complaint to state a RESPA claim against Sierra Pacific.  The RESPA claim against Sierra Pacific is DISMISSED WITHOUT LEAVE TO AMEND.

## E.  Fiduciary Duty Claim

Plaintiff asserts a claim against Sierra Pacific for breach of fiduciary duty.  Sierra Pacific argues that the complaint lacks any facts to support the assertion that Sierra Pacific owed Plaintiff a fiduciary duty.

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.  The absence of any one of these elements is fatal to the cause of action." *Brown v. Cal. Pension Adm'rs & Consultants, Inc.*, 45 Cal. App. 4th 333, 347-48 (1996) (internal quotation marks omitted).  "Absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Keen*, 2009 WL 3380454 at \*7 (internal

22

quotation marks omitted). "The relationship between a lending institution and its borrower-client is not fiduciary in nature. A commercial lender is entitled to pursue its own economic interests in a loan transaction." *Nymark*, 231 Cal. App. 3d at 1093 n.1 (internal citation omitted). "This right is inconsistent with the obligations of a fiduciary . . . to subordinate its interests to act on behalf of and for the benefit of another." *Id*.

Here, no special circumstances are pled. Nothing in the complaint suggests that Sierra Pacific acted as anything other than a typical lender. Plaintiff has failed to allege any facts that give rise to a fiduciary relationship between Sierra Pacific and Plaintiff. To the extent the complaint alleges that Sierra Pacific breached a fiduciary duty owed to Plaintiff, this claim is insufficiently pled and subject to dismissal.

Alternatively, Plaintiff appears to assert that Sierra Pacific's liability is derived from an "agency" relationship between certain individuals, including Norberg and Desilva, and Plaintiff who acted as the principal. In turn, Norberg and Desilva acted as agents for Sierra Pacific, these agents (not Sierra Pacific) breached a fiduciary duty they owed to Plaintiff, and Sierra Pacific is secondarily responsible for their conduct.

"A lender may . . . be secondarily liable through the actions of a mortgage broker, who has a fiduciary duty to its borrower-client, but only if there is an agency relationship between the lender and the broker." *Gonzalez*, 2010 WL 144862 at *13. The problem with this theory is that there are no facts pled to plausibly suggest an agency relationship existed between Sierra

23

Pacific (the lender) and Norberb or Desilva.  Absent such facts, Sierra Pacific cannot be pursued on a secondary liability theory. *Id*.

Sierra Pacific's motion to dismiss the fiduciary duty claim is GRANTED, and this claim is DISMISSED WITHOUT LEAVE TO AMEND.[7]

F.   <u>Fraud Claim</u>

Plaintiff asserts a fraud claim against Countrywide, MERS, and Sierra Pacific.  The moving defendants argue that Plaintiff's fraud claim is insufficiently pled under Rule 9(b).

With respect to Sierra Pacific, the complaint alleges that it directed, authorized, or participated in a "scheme" to "fraudulently induce Plaintiff" to enter into his loan transaction. (Doc. 14 at 17.)  Elsewhere in the complaint, Plaintiff asserts that his loan was part of a larger "scheme" perpetrated by "Defendants" pursuant to which they sold home loans on the "secondary market," then "pooled" these loans into trusts, and issued new securities backed by the pool. (*Id*. at 5, 7)  Under this scheme, Sierra Pacific's borrowers, including Plaintiff, "were steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers . . . were not qualified to obtain." (*Id.* at 8.)

With respect to Countrywide, the complaint alleges that Countrywide "misrepresented to Plaintiff that Countrywide has the right to collect monies from Plaintiff on its behalf or on behalf

---

[7] **At oral argument, when asked about leave to amend, Plaintiff conceded that dismissal of this claim should be without leave to amend.**

**24**

of others when Defendant Countrywide had no legal right to collect such monies." (*Id.* at 17.) As to MERS, the complaint alleges that "MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust." (*Id.* at 17-18.)

In California, "[t]he elements of fraud, which give[ ] rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003) (internal quotation marks omitted). Plaintiff's fraud claim is subject to Rule 9(b)'s elevated pleading standard, which Plaintiff has failed to meet with respect to each moving defendant.

As to Sierra Pacific, the allegations in the complaint fail to specify the "who, what, when, where, and how of the misconduct charged," *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted). The complaint provides no particular details on *what* specific role Sierra Pacific played in the "scheme" to "fraudulently induce Plaintiff" to enter into his loan transaction, or *when* and *where* the scheme occurred. *See Swartz,* 476 F.3d at 764-65 (concluding that, in a fraud suit involving multiple defendants, a plaintiff must "identif[y] the role" each defendant played "in the alleged fraudulent scheme," informing "each defendant separately of the allegations surrounding his alleged participation in the fraud") (alteration in original) (internal quotation marks

omitted); *Vess*, 317 F.3d at 1106 (concluding that a fraudulent conspiracy claim failed to satisfy Rule 9(b) because, among other things, the pleading failed to "provide the particulars of when, where, or how the alleged conspiracy occurred"). In addition, the complaint fails to specify what particular misrepresentation was involved in the fraudulent scheme. The complaint alleges that certain agents "made false statements to Plaintiff regarding material facts, including, but not limited to, interest rates, financing options, availability of financing, and Plaintiff's qualification for this loan . . . [which were] designed to fraudulently induce Plaintiff to enter into his transaction." (Doc. 14 at 17.) The complaint, however, fails to specify what these "false statements" were, when they were made, and how they were false. Sierra Pacific, or any defendant, is not required to guess what particular misrepresentation(s) are at issue in the fraud claim. Under Rule 9(b), the obligation is on Plaintiff to spell it out.

The complaint's allegation of a larger "scheme" in which "defendants" sold home loans on the "secondary market," "pooled" these loans into trusts, and issued new securities backed by the pool, is similarly deficient under Rule 9(b). Plaintiff has not identified the role each defendant played in this fraudulent scheme, when and where the scheme occurred, or details on the specific misrepresentation involved in the fraudulent scheme.

As to Countrywide, the allegation that Countrywide "misrepresented to Plaintiff that Countrywide has the right to collect monies from Plaintiff on its behalf or on behalf of others

when Defendant Countrywide had no legal right to collect such monies," fails to satisfy Rule 9(b). No details are provided on the specific content of the false representation, when the statement was made, where it was made, and how it was false.

Finally, as to MERS, the complaint is also deficient with respect to the allegation that (i) "MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust" and (ii) "MERS misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of Trust to subsequent beneficiaries." Missing from the complaint are facts specifying the particular verbal or written misrepresentations at issue, when they were made, where they were made, and how or why they are false. *See Morgera v. Countrywide Home Loans, Inc.*, No. 2:09-cv-1476-MCE-GGH, 2010 WL 160348, at *6 (E.D. Cal. Jan. 11, 2010) (dismissing same fraud claim as to MERS for failure to satisfy Rule 9(b) requirements); *Webb v. Indymac Bank Home Loan Servicing*, No. CIV 2:09-2380 WBS DAD, 2010 WL 121084, at *4 (E.D. Cal. Jan. 7, 2010) (same).[8]

In addition, and apart from Rule 9(b), under California law,

---

[8] To the extent any fraud claim against Countrywide, MERS or any defendant is tied to or involves the theory that possession of the original promissory note is a prerequisite to the initiation of non-judicial foreclosure, this theory lacks merit. *See Castaneda*, 2009 WL 4640673 at *7 ("Under California law, there is no requirement for the production of the original note to initiate a non-judicial foreclosure."); *see also Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009).

resulting damage is a necessary element of fraud. At the pleading stage, "the pleading must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated." *Commonwealth Mortgage Assurance Co. v. Superior Court*, 211 Cal. App. 3d 508, 518 (1989). The complaint, as MERS correctly argues, does not indicate how Plaintiff was damaged by MERS's alleged misrepresentations. Instead, the complaint states, in conclusory fashion, that Plaintiff was "harmed and suffered damages" (Doc. 14 at 18) as a result of the fraud. Absent facts to plausibly suggest a causal connection between the alleged fraud and some damage to Plaintiff, the fraud claim is insufficiently pled.

The motions to dismiss the fraud claim are GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

G.    UCL Claim

The complaint alleges that Countrywide, MERS, and Sierra Pacific engaged in "unlawful, unfair, and/or unfair business practices" in violation of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200 et seq. (Doc. 14 at 18.) The complaint does not assert any particular facts in support of this claim; rather, the pleading indiscriminately incorporates by reference all prior allegations in the complaint. (*Id.*)

The UCL prohibits unfair competition including "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). "Each prong of the UCL

28

is a separate and distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief." *Kearns*, 567 F.3d at 1127.

As to the unlawful prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). As to the "unfair" prong, "[a]n unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)). As to the fraudulent prong, "fraudulent acts are ones where members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).

Plaintiff's UCL claim has several deficiencies. First, to the extent Plaintiff asserts a UCL claim based on a violation of other law, his complaint fails to state a claim for a violation of TILA, RESPA, or any other law. Accordingly, to the extent the UCL claim is predicated on the violation of other law, it is insufficiently pled. Second, to the extent Plaintiff seeks to impose liability on Countrywide, MERS, or Sierra Pacific for "unfair" business practices, the complaint fails to indicate which particular acts or practices Plaintiff is relying upon to advance this claim, or what acts or practices each defendant did which constitute "unfair" acts or practices. Third, to the extent Plaintiff asserts a UCL claim

that is based on or grounded in fraud, it must meet the requirements of Rule 9(b), *Kearns*, 567 F.3d at 1124-27, *Vess*, 317 F.3d at 1103-04, which it does not. The complaint fails to specify what particular role each defendant played in the fraudulent conduct or scheme, when and where the scheme occurred, or details on the specific misrepresentation involved in the fraudulent scheme.

The motions to dismiss the UCL are GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

H.   Breach of Contract Claim

The complaint asserts a claim for breach of contract against Sierra Pacific. As alleged, "Plaintiff entered into an agreement with Defendant[] Sierra Pacific . . . whereby [it] promised to provide Plaintiff with an affordable loan." (Doc. 14 at 19.) Sierra Pacific allegedly breached this agreement in a number of respects.

To state a claim for breach of contract under California law, Plaintiff must allege: (1) the existence of a contract; (2) his performance or excuse for non-performance of the contract; (3) Sierra Pacific's breach of the contract; and (4) resulting damage. *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999).

Plaintiff's breach of contract claim against Sierra Pacific is deficient in at least two respects. First, the complaint lacks any facts to plausibly suggest that a contract existed between *Sierra Pacific* and Plaintiff to provide Plaintiff with an "affordable loan."

Plaintiff alleges that Sierra Pacific entered into a loan

agreement with Plaintiff and the "terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust." (Doc. 14 at 7.) The complaint, however, does *not* allege that among the terms memorialized in the Promissory Note was a written provision to provide Plaintiff with an "affordable" loan. In addition, Plaintiff alleges that before the loan was memorialized, he spoke with Defendant Desilva who was a "loan officer for Defendant Financial [Advantage Inc.]." (Doc. 14 at 6.) Desilva "advised" Plaintiff that Desilva could get Plaintiff "the 'best deal' and the 'best interest rates' available on the market." (Doc. 14 at 6.) Even assuming that Desilva made these statements, and that these statements support the inference that *Desilva* offered to provide Plaintiff with an "affordable loan," there are no facts pled in the complaint to suggest that Desilva was an employee or agent of *Sierra Pacific* or that Sierra Pacific was even aware of Desilva's statements and agreed to them. The complaint lacks any facts to suggest that Sierra Pacific, whether in writing or orally, ever entered into a contract with Plaintiff to provide him an "affordable loan." *See Lingad*, 2010 WL 347994 at *9 (dismissing breach of contract claim with same allegations).

Second, Plaintiff's breach of contract claim against Sierra Pacific also fails because the alleged agreement to provide Plaintiff with "affordable loan" is too vague and indefinite to form a contract. "To form a contract, an offer must be sufficiently definite ... that the performance promised is reasonably certain." *Alexander v. Codemasters Group Ltd.*, 104 Cal. App. 4th 129, 141 (2002) (internal quotation marks omitted). In

the lending context, "[a] loan commitment is not binding on the lender unless it contains all of the material terms of the loan," which "include the identity of the lender and borrower, the amount of the loan, and the terms for repayment." *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (1991) (alteration in original) (internal quotation marks omitted).

A purported agreement to provide an "affordable loan" is not sufficiently definite that the performance promised is reasonably certain. Even if it were tantamount to a loan commitment, it lacks the material terms necessary to form an enforceable contract. The alleged commitment to provide an "affordable loan" is too vague and uncertain to form a contract between Plaintiff and Sierra Pacific. *See Blanco*, 2009 WL 4674904 at *7 (analyzing the same alleged promise to provide an "affordable loan" and concluding "[s]uch a vague promise is not sufficient to show the existence of a contract")*; see also See Hardy v. Indymac Federal Bank*, __ F.R.D__, 2009 WL 2985446, at *5 (E.D. Cal. Sept. 15, 2009).

Sierra Pacific's motion to dismiss the breach of contract claim against it is GRANTED WITH LEAVE TO AMEND.

## I.    Implied Covenant Claim

Plaintiff asserts a claim against Sierra Pacific for breach of the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing exists in every contract. The implied covenant "is aimed at making effective the agreement's promises." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400 (2000) (internal quotation marks omitted). "Broadly stated, that covenant requires that neither party do anything which

will deprive the other of the benefits of the agreement." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 91 (1995) (internal quotation marks omitted). The implied covenant "prevent[s] a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.*" Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031-32 (1992) (internal quotation marks omitted).

The implied covenant "does *not* extend beyond the terms of the contract at issue." *Poway Royal Mobilehome Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460, 1477 (2007). Instead, the "implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (internal quotation marks omitted). "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties . . . ." *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990). "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation" and there "is no obligation to deal fairly or in good faith absent an existing contract." *Racine & Laramie, Ltd.*, 11 Cal. App. 4th at 1031-32.

Here, as Sierra Pacific correctly argues, Plaintiff's implied covenant claim is insufficiently pled for two reasons. First, the complaint does not allege or identify what underlying contract

between Sierra Pacific and Plaintiff forms the basis for this claim. Instead, the complaint merely alleges that a duty of good faith and fair dealing was "implied by law into the contract at issue" (Doc. 14 at 20) without ever identifying that contract. To the extent the contract at issue is the alleged promise to provide an "affordable loan," this vague and indefinite commitment cannot supply the predicate contract between Sierra Pacific and Plaintiff.

Second, the implied covenant claim is also deficient in that it fails to identify any acts that *Sierra Pacific* committed which allegedly constitute a breach of the implied covenant. To the extent the contract at issue is the loan agreement memorialized in the Promissory Note, Plaintiff has not alleged any conduct by Sierra Pacific that frustrated Plaintiff's rights to the benefits of any express provision in that contract. *See Lingad*, 2010 WL 347994 at *10 (concluding same implied covenant claim failed because Plaintiff had not "alleged what contract form[ed] the basis of [the] claim; nor . . . identified any express provision which ha[d] been frustrated by [defendant's] conduct").

Sierra Pacific's motion to dismiss the implied covenant claim against it is GRANTED WITHOUT LEAVE TO AMEND.[9]

## V. CONCLUSION

For the reasons stated:

1. As to the TILA claim for damages, Sierra Pacific's motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO

---

[9] At oral argument, Plaintiff agreed that dismissal of this claim should be without leave to amend.

AMEND.  Plaintiff shall have one opportunity to allege what facts were hidden that prevented him from discovering his claim, and how those hidden facts relate to the TILA violations Sierra Pacific allegedly committed.

2.  As to the TILA claim for rescission, Sierra Pacific's motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

3.  As to the RFDCPA claims against Countrywide and Sierra Pacific, the motions to dismiss are GRANTED, and these claims are DISMISSED WITH LEAVE TO AMEND.

4.  As to the negligence claims against Countrywide, MERS, and Sierra Pacific, the motions to dismiss are GRANTED, and these claims are DISMISSED WITH LEAVE TO AMEND.

5.  As to the RESPA claim against Countrywide, its motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

6.  As to the RESPA claim against Sierra Pacific, its motion to dismiss is GRANTED, and this claim is DISMISSED WITHOUT LEAVE TO AMEND.

7.  As to the fiduciary duty claim against Sierra Pacific, the motion to dismiss is GRANTED, and this claim is DISMISSED WITHOUT LEAVE TO AMEND.

8.  As to the fraud claims against Countrywide, MERS, and Sierra Pacific, the motions to DISMISS are GRANTED, and these claims are DISMISSED WITH LEAVE TO AMEND.

9.  As to the UCL claims against Countrywide, MERS, and Sierra Pacific, the motions to DISMISS are GRANTED, and these

claims are DISMISSED WITH LEAVE TO AMEND.

10. As to the breach of contract claim against Sierra Pacific, the motion to dismiss is GRANTED, and this claim is DISMISSED WITH LEAVE TO AMEND.

11. As to the implied covenant claim against Sierra Pacific, the motion to dismiss is GRANTED, and this claim is DISMISSED WITHOUT LEAVE TO AMEND.

Any amended complaint is due within thirty (30) days from the date of electronic service of this Memorandum Decision. Any responsive pleading is due within thirty (30) days from the date of electronic service of any such amended complaint.

Defendants shall submit a form of order consistent with, and within five (5) days following electronic service of, this Memorandum Decision.

IT IS SO ORDERED.

Dated:    February 16, 2010              /s/ Oliver W. Wanger
                                  UNITED STATES DISTRICT JUDGE