1  [1]

2

3

4    IN THE UNITED STATES DISTRICT COURT FOR THE
          EASTERN DISTRICT OF CALIFORNIA

5

6   VINCENT SIPE,                )      No. CV-F-09-798 OWW/DLB
                                 )
7                                )      MEMORANDUM DECISION GRANTING
                                 )      DEFENDANT SIERRA PACIFIC
8                  Plaintiff,    )      MORTGAGE COMPANY'S MOTION TO
                                 )      DISMISS SECOND AMENDED
9            vs.                 )      COMPLAINT (Doc. 42) AND
                                 )      GRANTING DEFENDANTS
10                               )      COUNTRYWIDE BANK AND
    COUNTRYWIDE BANK, et al.,    )      MORTGAGE ELECTRONIC
                                 )      REGISTRATION SYSTEM, INC.'S
11                               )      MOTION TO DISMISS SECOND
                  Defendants.    )      AMENDED COMPLAINT (Doc. 43)
12                               )
                                 )
13

14

15      Pursuant to the Memorandum Decision filed on February 16,

16  2010, (Doc. 37, "February 16 Memorandum Decision"), and the Order

17  filed on February 18, 2010, (Doc. 39), Plaintiff timely filed a

18  Second Amended Complaint ("SAC").  The caption of the SAC names

19  as Defendants Countrywide Bank ("CWB" or "Countrywide"), Sierra

20  Pacific Mortgage Company, Inc. ("SPM" or "Sierra Pacific"),

21  Financial Advantage, Inc., John Daniel Norberg, Carol DeSilva,

22

23  _____

24      [1]The status of Financial Advantage, Inc., John Norberg, and
    Carol DeSilva is unclear.  Although summons were issued on May 5,
    2009 (Doc. 4), the only return of service is as to John Norberg,
25  who was personally served on September 28, 2009 (Doc. 18).  Norberg
    has not appeared in this action.  There are no returns of service
26  filed for Financial or DeSilva.

                                  1

1 | and Does 1-20.[1]

2 |     In the section of the SAC captioned "Parties," Mortgage

3 | Electronic Registration System, Inc. ("MERS") is also named as a

4 | defendant.  However, MERS is not specifically named in any of the

5 | causes of action in the SAC, although causes of action for

6 | negligence, fraud and unfair competition were alleged against

7 | MERS in the First Amended Complaint.  The SAC alleges that MERS

8 | is engaged in the business of holding title to mortgages, that

9 | MERS was not licensed to do business in California at the time of

10 | the residential mortgage loan, that it has no beneficial interest

11 | or right to enforce the terms of the promissory note, and because

12 | it is not in possession of the promissory note, it has no

13 | authority to conduct a non-judicial foreclosure sale.  Plaintiff

14 | must clarify whether or not MERS is still a party to this action

15 | and, if not, whether these allegations should be stricken as

16 | irrelevant.

17 |     The SAC alleges that CWB is a diversified services

18 | corporation engaged primarily in residential mortgage loan

19 | servicing which has represented to Plaintiff that it has the

20 | right to service Plaintiff's residential mortgage and demand

21 | payments from Plaintiff, which right Plaintiff denies; that SPM

22 | is a diversified financial marketing and/or services corporation

---

[1]The status of Defendants Financial, Norberg and DeSilva is unclear.  Summons were issued as to these defendants on May 5, 2009 (Doc. 4).  The only return of service filed is as to Norberg, who was personally served on September 28, 2009 (Doc. 18). Norberg has not appeared in this action.  There are no returns of service filed as to Financial and DeSilva.

and is believed to be a residential mortgage lender and was the original lender for Plaintiff's residential mortgage loan; that Financial, Norberg and DeSilva sold Plaintiff the mortgage involved in this action; that DeSilva, a licensed real estate salesperson, was employed by Financial and sold the mortgage to Plaintiff; that Norberg, a licensed real estate broker, was the broker of record for Financial; and that Financial is a diversified financial marketing company engaged in mortgage brokering and was the mortgage broker for Plaintiff's residential mortgage loan.

For "General Allegations," the SAC alleges:

17.   This action arises out of a loan related activity to the Property of which the Plaintiff is the rightful owner.

18.   Beginning in 1998 and continuing through 2009, lenders, including Defendant SPM, their agents, employees, and related servicers, including Defendant CWB, developed a scheme to rapidly infuse capital into the home mortgage lending system by selling mortgages on the secondary market, normally three to five times, to create a bankruptcy remote transaction. For there to be a bankruptcy remote transaction, there must be a true sale of the note and no interest can remain in the seller of the note.

19.   In a typical transaction, the original lender, called "Originator", in this case Defendant SPM would immediately upon closing, enter the loan into MERS system, then sell the loan to their "Warehouse Lender". The "Warehouse Lender" in this case is not known to Plaintiff.  Since these transactions are hidden and not recorded, Plaintiff will only be able to discover the name of the "Warehouse Lender" through Discovery.

20.   The loan would then be sold by the

3

"Warehouse Lender" to a "Special Investment Vehicle" ("SIV"). The SIV would then sell the loan to a "Depositor". Depositor would in turn pool these mortgages into large trusts, securitizing the pool and selling these securities on Wall Street as mortgage backed securities, bonds, derivatives, and insurances, often for twenty or thirty times the original mortgage and sometimes fraudulently selling the same mortgage to multiple investors.

21.   This securitized trust is governed by the common law trust rules of Delaware or New York, depending on its origin, the prospectus filed with the Securities and Exchange Commission and distributed to investors, and Internal Revenue Code § 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

22.   The servicing of the pool is governed by a document titled "Pooling and Servicing Agreement" ("PSA"). Plaintiff is informed and believes, and thereon alleges that the REMIC rules, the PSA and the prospectus require the notes and deeds of trust to be received by the trustee on or before the closing date of the trust.

23.   Plaintiff's mortgage note is a negotiable instrument under the Uniform Commercial Code Article 3 and California Commercial Code § 3301 et seq. To transfer ownership of a mortgage note, it must be properly endorsed by a person with authority to endorse the note, physical delivery of the note and acceptance of the note.

24.   Plaintiff is informed and believes, and there on alleges that the mortgage note which is the subject of this action was not received by the trustee of the securitized trust at all, and certainly not within a specified number of days of the trust's formation.

25.   Plaintiff is informed and believes and thereon alleges that the mortgage note and deed of trust, immediately after closing and recording, was entered into MERS and the

4

original note was destroyed or warehoused,
but not transferred, assigned or negotiated.
This resulted in the stripping and voiding of
the security interest in the note and no
interest was ever transferred to the trust.

26.   In "selling" these mortgage notes on the
secondary market, Defendant SPM, along with
the Warehouse Lender, Sponsor and Depositor
failed to follow the basic legal requirements
for the transfer of a negotiable instrument
and an interest in real property, including,
but not limited to, written assignments of
Plaintiff's Deed of Trust, delivery of the
Deed of Trust, endorsements of Plaintiff's
Note by the owner of Plaintiff's Note,
delivery of Plaintiff's Note and acceptance
of Plaintiff's Note.

27.   In fact, no interest in Plaintiff's
Mortgage Note, Deed of Trust or Property was
ever legally transferred to any of the
parties in the chain and that the Defendants
are in effect strawmen, and parties without
any standing before this Court to assert
legal rights with respect to this contractual
transaction.

28.   Defendant CWB thus could not have
legally been given the right to service
Plaintiff's Loan.  Accordingly, Plaintiff
alleges Defendant CWB representations to
Plaintiff that it has the right to service
Plaintiff's Loan was, and is, fraudulent and,
Defendant CWB, knowingly and fraudulently
entered this information into the MERS
system.

29.   Further, as this process became more and
more profitable, the underwriting
requirements were repeatedly reduced to
ensure [sic] more and more unsuspecting
borrowers. As Defendant SPM reduced the
underwriting requirements, it introduced the
concept of "churning" loans involving a
calculated plan to repeatedly refinance
borrowers' loans taking as much equity as
possible, and artificially driving up housing
prices.

30.   In this case, Defendants FINANCIAL and

5

NORBERG, in concert with Defendant SPM, placed Plaintiff into a predatory loan with toxic terms, as detailed below, with the ultimate objective of forcing Plaintiff to refinance his loan in the near future for each of these named Defendants' financial gain.

31.  Unlike the former traditional lending practices prior to the loan securitization process, Defendant SPM profited from the sale of the loans, not from the loan investment itself. The intent of these "Lenders", such as Defendant SPM, under the securitization process, was to trap as many unsuspecting borrowers as possible, Plaintiff included, regardless of the borrower's credit history or ability to pay, take as much of the borrower's equity as possible through high fees and sell the loans for a profit on the secondary market.

32.  Servicers, such as Defendant CWB, would then obtain the servicing rights to the borrowers' loans, Plaintiff's loan included, profiting by taking a percentage of the amounts collected from the borrowers, collecting additional fees or initiating foreclosure proceedings. Plaintiff is informed and believes, and thereon alleges that Defendant CWB is not paid to modify the terms of Plaintiff's Mortgage Note, giving them a disincentive to work with borrowers, Plaintiff included, to negotiate a fair resolution.

33.  Defendant SPM regularly trained, directed, authorized and/or participated with mortgage brokers, in this case, Defendants FINANCIAL and NORBERG, to implement this scheme, giving them monetary incentives to violate the borrowers' trust, Plaintiff included.

34. On or about March 01, 2006, Defendant DESILVA approached Plaintiff telling him that she was the loan officer for Defendant FINANCIAL, and solicited him to refinance his residence.

35.  Defendant DESILVA advised Plaintiff that

she could get him the "best deal" and the "best interest rates" available on the market. Defendant DESILVA knew or should have known that these assurances were false and misleading.

36.   When Plaintiff applied for this loan, he accurately described his income and provided Defendant DESILVA with documentation of his income including tax returns, bank statements, W-2s and 1099s. Plaintiff is now informed and believes, and thereon alleges that his income was overstated on the loan application by Defendant DESILVA, without his knowledge or permission. Plaintiff is informed and believes, and thereon alleges that Defendant SPM's underwriters knew or should have known of the fraudulent information on the loan application but approved the loan anyway. Plaintiff's income was overstated on the loan application by the Defendant DESILVA, Plaintiff had an income of $4,800.00 per month and the loan application stated Plaintiff had an income of $7,800.00 at the time the loan was made.

37.   Defendant DESILVA overstated the borrower's income in order to qualify him for this refinance transaction. The standard housing and debt to income ratios are 33% for housing and 38% for debt to income.  Based on the Plaintiff's monthly income of $4,800.00 and using the minimum mortgage payments of $1,398.61, the housing ratio was 29.14% and the debt to income ratio was 46.05%. Using the fully amortized and/or fully indexed mortgage payments of $2,082.43, the housing ratio was 43.38% and the debt to income ratio was 60.30%. Based on the overstated monthly income of $7,800.00 and using the minimum mortgage payments of $1,398.61, the housing ratio was 17.93% and the debt to income ratio was 28.34%.

38.   Defendant DESILVA advised Plaintiff that he [sic] could get him 100% financing for his loan.  However, Defendant DESILVA actually sold Plaintiff a predatory loan. The loan, in the amount of $286,000.00 carried a teaser rate of 2.0% for one month, that adjusted to 9.95% interest rate, based on 12 month MTA

7

index plus 2.90%, negatively amortized 115.00%. Plaintiff's initial monthly payments for the loan was $1,057.11. Plaintiff's fully amortized payment was $2,082.43.

39. Plaintiff is informed and believes, and thereon alleges that Defendant DESILVA received $4,290.00 in yield spread premiums and $1,840.00 in origination fee for Plaintiff's loan. The combined yield spread premiums of the loan was $6,130.00.

40. Defendant DESILVA further advised Plaintiff that if the loan ever became unaffordable, she would simply refinance it into an affordable loan, something Defendant DESILVA knew or should have known was false and misleading. Defendant DESILVA knew or should have known that these misrepresentations were designed to induce Plaintiff to accept this loan to his detriment.

41. Plaintiff was not given a copy of any of the loan documents prior to closing as required. At closing, Plaintiff was only given a few minutes to sign the documents. The notary did not explain any of the loan documents nor was Plaintiff allowed to review them. Plaintiff was simply told to sign and initial the documents provided by the notary. Further, Plaintiff did not receive the required copies of a proper notice of cancellation.

42. The facts surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents involved therein. Facts surrounding this transaction continue to be hidden from the Plaintiff to this day.

43. On or about June 1, 2006, Plaintiff completed the loan on the Property. The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the Property. The Deed of Trust identified Greenhead Investments, Inc. as Trustee, and Defendant Spm [sic] as Lender.

8

44.   The Deed of Trust also identified MERS as nominee for the Lender and Lender's successors and assigns, and the beneficiary. However, MERS has no standing in this forum. It is not licensed to be and/or act as a nominee or a beneficiary of any of the Defendants, nor does its Terms and Conditions, enumerated above, permit MERS to act in such capacity. MERS was developed to be a document storage company, not a nominee or a beneficiary of any of the Defendants. Therefore, the Deed of Trust must fail. Further, MERS was not licensed to do business in the State of California, and was not registered with the State of California at the inception of the loan involved herein.

45.   On or about April 7, 2009, a Qualified Written Request ("QWR" or "Request") was mailed to Defendant CWB. The QWR properly identified the Plaintiff, the Plaintiff's residential mortgage loan, the objections to the loan servicing and requested specific documents. The QWR also included a demand to rescind the loan. Defendant CWB has yet to properly respond to this Request.

46.   On information and belief, Plaintiff alleges that each of the Defendants is not a "person entitled to enforce" the security interest under the Note and the Deed of Trust, as defined in California Commercial Code § 3301. Plaintiff alleges that Defendants sold home loans, Plaintiff home loan included, to other financial entities, which "pooled" large numbers of loans, put them into trusts, and sold securities based on such loans.  Defendants do not own the loan subject to this action, and are not entitled to enforce the security interest.

47.   Defendants regularly approved loans to unqualified borrowers and implemented unlawful lending practices. Further, Defendant SPM employed brokers and loan officers who were paid commissions based on the volume of loans they sold to consumers, Plaintiff included. Defendant SPM loan officers received a greater commission or bonus for placing borrowers in loans with relatively high yield spread premiums. As

9

such, borrowers, Plaintiff included, were
steered and encouraged into loans with terms
unfavorable to them, or loans which the
borrowers were not qualified to obtain.

48.  Defendants are attempting to obtain
putative legal title to Plaintiff's Property
without having established that either of
them was ever a "person entitled to enforce"
the security interest under the Note and the
Deed of Trust.

49.  Each Defendant, in fact, is not a
"person entitled to enforce" said interest.
No legal transfer of the Mortgage Note, Deed
of Trust or any other interest in Plaintiff's
Property was effected that gave any of the
Defendants the right to be named a trustee,
mortgagee, beneficiary or an authorized agent
of trustee, mortgagee or beneficiary of
Plaintiff's Mortgage Note, Deed of Trust or
any other interest in Plaintiff's Property.

50.  Plaintiff entered into a loan
transaction with Defendant SPM, which was
subject to finance charges, and which was
initially payable to Defendant SPM under the
Deed of Trust.

51.  Defendants SPM and NORBERG, as agents of
the Lender, were required to provide
Plaintiff with said disclosures, but failed
to do so.

52.  In all of the wrongful acts alleged
herein, Defendants, and each of them, have
utilized the United States mail, telephones,
and internet in furtherance of their pattern
of unlawful and illegal conduct to collect on
negotiable instruments when they were not
entitled to do so.

53.  Further, Defendants fraudulently added
costs and charges to the payoff amount of the
Note that were not justified or proper under
the terms of the Note or the law.

54.  Defendants represented that they have
the right to payment under the Mortgage Note,
payment of which was secured by the Deed of
Trust.  Whereas in fact, Defendants, and each

10

1  of them, are not the real parties in interest
   because they are not the legal trustee,
2  mortgagee or beneficiary, nor are they
   authorized agents of the trustee, mortgagee
3  or beneficiary, nor are they in possession of
   the Note, or holders of the Note, or non-
4  holders of the Note entitled to payment, as
   required by the California Commercial Code §§
5  3301 and 3309, and California Civil Code §
   2924 et seq.
6
   55.  Defendants engaged in a civil conspiracy
7  where by they secreted the nature of the
   misdeeds alleged herein, the roles and
8  identities of the various entities that were
   purportedly handling his Loan at any given
9  time, and the transfers of the loan documents
   and negotiable instruments that are the
10 subject of this action.

11 56.  Defendants misrepresented material facts
   with the intent of forcing Plaintiff to pay
12 large sums of money to the Defendants, to
   which they were not entitled, resulting in
13 profit for the Defendants.

14 57.  The misrepresentations and allegations
   stated herein were all discovered within the
15 past year, such that any applicable statute
   of limitations are extended or should be
16 extended pursuant to the equitable tolling
   doctrine or other equitable principles. Even
17 through the exercise of reasonable diligence,
   Plaintiff would still not have been able to
18 learn of or file his claim on time.

19     The SAC alleges the following causes of action: (1) First

20 Cause of Action for fraud against all Defendants; (2) Second

21 Cause of Action for breach of contract against DeSilva and

22 Norberg; (3) Third Cause of Action for breach of the implied

23 covenant of good faith and fair dealing against DeSilva, Norberg

24 and Financial; (4) Fourth Cause of Action for violation of

25 California Rosenthal Act, Civil Code §§ 1788 *et seq.* against CWB;

26 (5) Fifth Cause of Action for negligence against DeSilva, Norberg

11

1    and Financial; (6) Sixth Cause of Action for breach of fiduciary

2    duty against DeSilva, Norberg and Financial; and (7) Seventh

3    Cause of Action for violations of California Business &

4    Professions Code §§ 17200 *et seq.* against all Defendants.

5        Before the Court are the motions to dismiss the SAC by SPM

6    and by CWB and MERS.

7        A.   <u>GOVERNING STANDARDS</u>.

8            1.   <u>Motion To Dismiss</u>.

9        Dismissal under Rule 12(b)(6) is appropriate where the

10   complaint lacks sufficient facts to support a cognizable legal

11   theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

12   (9th Cir. 1990). To sufficiently state a claim for relief and

13   survive a 12(b)(6) motion, the pleading "does not need detailed

14   factual allegations" but the "[f]actual allegations must be enough

15   to raise a right to relief above the speculative level." *Bell Atl.*

16   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and

17   conclusions" or a "formulaic recitation of the elements of a cause

18   of action will not do." *Id.* Rather, there must be "enough facts to

19   state a claim to relief that is plausible on its face." *Id.* at 570.

20   In other words, the "complaint must contain sufficient factual

21   matter, accepted as true, to state a claim to relief that is

22   plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct.

23   1937, 1949 (2009) (internal quotation marks omitted). The Ninth

24   Circuit has summarized the governing standard, in light of *Twombly*

25   and *Iqbal*, as follows: "In sum, for a complaint to survive a motion

26   to dismiss, the non-conclusory factual content, and reasonable

                                    12

inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).  Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S. Ct. at 1950.  A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).  "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

1     **2.   Rule 9(b)**.

2     Rule 9(b) imposes an elevated pleading standard for fraud

3  claims.   Rule 9(b) states:

4              In alleging fraud or mistake, a party must
               state with particularity the circumstances
5              constituting fraud or mistake. Malice,
               intent, knowledge, and other conditions of a
6              person's mind may be alleged generally.

7  "To comply with Rule 9(b), allegations of fraud must be specific

8  enough to give defendants notice of the particular misconduct

9  which is alleged to constitute the fraud . . . ." *Swartz v. KPMG*

10 *LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks

11 omitted).  Allegations of fraud must include the "time, place,

12 and specific content of the false representations as well as the

13 identities of the parties to the misrepresentations." *Id.*

14 (internal quotation marks omitted).  The "[a]verments of fraud

15 must be accompanied by the who, what, when, where, and how of the

16 misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

17 1124 (9th Cir. 2009) (internal quotation marks omitted).  A

18 plaintiff alleging fraud "must set forth more than the neutral

19 facts necessary to identify the transaction. The plaintiff must

20 set forth what is false or misleading about a statement, and why

21 it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

22 (9th Cir. 2003) (emphasis and internal quotation marks omitted).

23     **B.   FIRST CAUSE OF ACTION FOR FRAUD.**

24     CWB and SPM move to dismiss the First Cause of Action for

25 fraud.

26     The February 16 Memorandum Decision dismissed this claim

                                    14

with leave to amend, ruling:

> With respect to Sierra Pacific, the complaint alleges that it directed, authorized, or participated in a "scheme" to "fraudulently induce Plaintiff" to enter into his loan transaction. (Doc. 14 at 17.)  Elsewhere in the complaint, Plaintiff asserts that his loan was part of a larger "scheme" perpetrated by "Defendants" pursuant to which they sold home loans on the "secondary market," then "pooled" these loans into trusts, and issued new securities backed by the pool. (*Id.* at 5, 7)  Under this scheme, Sierra Pacific's borrowers, including Plaintiff, "were steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers . . . were not qualified to obtain."  (*Id.* at 8.)

> With respect to Countrywide, the complaint alleges that Countrywide "misrepresented to Plaintiff that Countrywide has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant Countrywide had no legal right to collect such monies." (*Id.* at 17.)  As to MERS, the complaint alleges that "MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust." (*Id.* at 17-18.)

> In California, "[t]he elements of fraud, which give[ ] rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003) (internal quotation marks omitted). Plaintiff's fraud claim is subject to Rule 9(b)'s elevated pleading standard, which Plaintiff has failed to meet with respect to each moving defendant.

> As to Sierra Pacific, the allegations in the complaint fail to specify the "who, what,

15

when, where, and how of the misconduct charged," *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted).  The complaint provides no particular details on *what* specific role Sierra Pacific played in the "scheme" to "fraudulently induce Plaintiff" to enter into his loan transaction, or *when* and *where* the scheme occurred. *See Swartz,* 476 F.3d at 764-65 (concluding that, in a fraud suit involving multiple defendants, a plaintiff must "identif[y] the role" each defendant played "in the alleged fraudulent scheme," informing "each defendant separately of the allegations surrounding his alleged participation in the fraud") (alteration in original) (internal quotation marks omitted); *Vess*, 317 F.3d at 1106 (concluding that a fraudulent conspiracy claim failed to satisfy Rule 9(b) because, among other things, the pleading failed to "provide the particulars of when, where, or how the alleged conspiracy occurred").  In addition, the complaint fails to specify what particular misrepresentation was involved in the fraudulent scheme.  The complaint alleges that certain agents "made false statements to Plaintiff regarding material facts, including, but not limited to, interest rates, financing options, availability of financing, and Plaintiff's qualification for this loan . . . [which were] designed to fraudulently induce Plaintiff to enter into his transaction." (Doc. 14 at 17.)  The complaint, however, fails to specify what these "false statements" were, when they were made, and how they were false.  Sierra Pacific, or any defendant, is not required to guess what particular misrepresentation(s) are at issue in the fraud claim.  Under Rule 9(b), the obligation is on Plaintiff to spell it out.

The complaint's allegation of a larger "scheme" in which "defendants" sold home loans on the "secondary market," "pooled" these loans into trusts, and issued new securities backed by the pool, is similarly deficient under Rule 9(b).  Plaintiff has not identified the role each defendant played in this fraudulent scheme, when and where the scheme occurred, or details on the specific misrepresentation involved in the fraudulent

scheme.

As to Countrywide, the allegation that Countrywide "misrepresented to Plaintiff that Countrywide has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant Countrywide had no legal right to collect such monies," fails to satisfy Rule 9(b).  No details are provided on the specific content of the false representation, when the statement was made, where it was made, and how it was false.

Finally, as to MERS, the complaint is also deficient with respect to the allegation that (i) "MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust" and (ii) "MERS misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of Trust to subsequent beneficiaries."  Missing from the complaint are facts specifying the particular verbal or written misrepresentations at issue, when they were made, where they were made, and how or why they are false. *See Morgera v. Countrywide Home Loans, Inc.*, No. 2:09-cv-1476-MCE-GGH, 2010 WL 160348, at *6 (E.D. Cal. Jan. 11, 2010) (dismissing same fraud claim as to MERS for failure to satisfy Rule 9(b) requirements); *Webb v. Indymac Bank Home Loan Servicing*, No. CIV 2:09-2380 WBS DAD, 2010 WL 121084, at *4 (E.D. Cal. Jan. 7, 2010) (same).[1]

In addition, and apart from Rule 9(b), under California law, resulting damage is a necessary element of fraud.  At the pleading stage, "the pleading must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated." *Commonwealth Mortgage Assurance Co. v. Superior Court*, 211 Cal. App. 3d 508, 518 (1989).  The complaint, as MERS correctly argues, does not indicate how Plaintiff was damaged by MERS's alleged misrepresentations. Instead, the complaint states, in conclusory fashion, that Plaintiff was "harmed and suffered damages" (Doc. 14 at 18) as a result

17

of the fraud.   Absent facts to plausibly
suggest a causal connection between the
alleged fraud and some damage to Plaintiff,
the fraud claim is insufficiently pled.

...

[1] To the extent any fraud claim against
Countrywide, MERS or any defendant is tied to
or involves the theory that possession of the
original promissory note is a prerequisite to
the initiation of non-judicial foreclosure,
this theory lacks merit. *See Castaneda*, 2009
WL 4640673 at *7 ("Under California law,
there is no requirement for the production of
the original note to initiate a non-judicial
foreclosure."); *see also Nool v. HomeQ
Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D.
Cal. 2009).

     As to SPM and CWB, the First Cause of Action of the SAC

alleges:

          Defendants SPM, NORBERG, DESILVA, and
          FINANCIAL

          66.   Defendant SPM was the original lender of
          the subject mortgage loan for Plaintiff's
          Property.

          67.   Defendant SPM's conduct herein was not
          that of a traditional lender, in that it
          actively participated in the enforcement of
          the predatory lending scheme against
          Plaintiff's interest.

          68.   Defendant SPM regularly trained,
          directed, authorized, and participated with
          mortgage brokers and loan officers to
          implement this fraud, giving them monetary
          incentives to violate the borrowers' trust.

          69.   Defendant SPM exercised extensive
          control over the actions of Defendants
          NORBERG, DESILVA, and FINANCIAL by directly
          ordering, authorizing and participating with
          Defendants NORBERG, DESILVA, and FINANCIAL in
          order to conceal the misrepresentations on
          Plaintiff's loan application.

18

70.   Defendant SPM shared in the profits made from the sale of the subject mortgage loans to Plaintiff by ensuring that the mortgage contained terms that made them profitable on the secondary market.

71.   Defendant SPM, through its underwriters, knew that the income stated on Plaintiff's loan application did not match the monthly income represented from the income verification documents provided by Plaintiff to Defendants NORBERG, DESILVA, and FINANCIAL.

72.   Defendant SPM conspired with Defendants NORBERG, DESILVA, and FINANCIAL to hide the true terms of this loan from Plaintiff by not providing Plaintiff with the required loan disclosure documents prior to or after the signing of the loan documents.

73.   At closing, Plaintiff were presented with a stack of documents by a notary, approximately 1 inch thick, with tabs that indicated where Plaintiff should sign and/or initial. There was no representative of SPM, NORBERG, DESILVA, or FINANCIAL present at closing.

74.   In fact, Defendants NORBERG, DESILVA, or FINANCIAL have been advised by Defendant SPM not to be present at closing.

75.   At closing, the notary did not explain any of the loan documents to Plaintiff and had been advised not to explain any of the loan documents to Plaintiff by Defendants NORBERG, DESILVA, or FINANCIAL. The notary simply told Plaintiff to sign and initial the documents provided.

76.   Plaintiff were [sic] only given a few minutes to sign the documents and Plaintiff were [sic] not allowed to review the documents.

77.   When Plaintiff applied for this loan, he accurately described his income and provided Defendant DESILVA with documentation of his income including tax returns, bank statements, W-2s and 1099s. Plaintiff is now

19

informed and believes, and thereon alleges that his income was overstated on the loan application by Defendant DESILVA, without his knowledge or permission. Plaintiff is informed and believes, and thereon alleges that Defendant SPM's underwriters knew or should have known of the fraudulent information on the loan application but approved the loan anyway. Plaintiff's income was overstated on the loan application by the Defendant DESILVA, Plaintiff had an income of $4,800.00 per month and the loan application stated Plaintiff had an income of $7,800.00 at the time the loan was made.

**Defendant CWB**

78.  As alleged herein, Defendant CWB misrepresented to Plaintiff that Defendant CWB has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant CWB had no legal right to collect such monies.

79.  Defendant CWB has known, at all relevant times, that it, in fact, is not entitled to collect monies from Plaintiff.

80.  Plaintiff's mortgage note is a negotiable instrument under the Uniform Commercial Code Article 3 and California Commercial Code § 3301 et seq.

81.  To transfer ownership of a mortgage note in a "True Sale" transaction, it requires proper endorsement by a person with authority to endorse the note, physical delivery of the note and acceptance of the note.

82.  In "selling" this mortgage note Defendant SPM failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property, in that (1) there was not a proper and timely written assignment of the deed of trust, (2) there was not a proper endorsement of the note a person with authority to endorse the note, and (3) there was not proper and timely delivery of the Note and acceptance of the Note and Deed of Trust.

20

83.   As a result of Defendant SPM's failure to follow the guidelines under Uniform Commercial Code Article 3 and California Commercial Code § 3301 et seq., no interest in Plaintiff's Mortgage Note, Deed of Trust or Property was ever legally transferred to any of the named Defendants or Doe Defendants.

84.   Defendant CWB, as part of its duties and responsibilities "servicing" the Subject Mortgage, entered information related to the subject mortgage loan into MERS and therefore has direct knowledge related to inadequate and illegal transfers of title, inadequate and illegal assignments of rights, inadequate and illegal substitutions of parties and all other inadequate and illegal activity related to the chain of title for the Subject Property.

85.   Accordingly, Defendant CWB could not have legally been given the right to service Plaintiff's Loan.

86.   Defendant CWB knew or should have known the law namely, Uniform Commercial Code Article 3 and California Commercial Code § 3301 - and its application to its business services.

87.   Defendant CWB's representations to Plaintiff that it has the right to service Plaintiff's Loans was, and is, fraudulent.

General Allegations as to all Defendants and Damages

88.   These material representations made by each Defendant were false.

89.   Each Defendant knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

90.   Defendants intended that Plaintiff rely on these material representations.

91.   Plaintiff reasonably relied on said representations.

21

92.  As a result of Plaintiff's reliance, he was harmed and suffered damages including, but not limited to, loss of property, incurred attorneys' fees and costs to recover the Property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression. Plaintiff's reliance on Defendants' false material representations was a substantial factor in causing Plaintiff harm.

93.  Additional evidentiary facts constituting fraud in this matter are secreted within Defendants' knowledge and possession.

94.  Defendants, and each of them, conspired together to perpetrated the fraud alleged herein over the course of several years.

95.  Defendants are guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendants' actions were malicious and willful, in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

96.  Defendants SPM, CWB, and FINANCIAL's officers, directors and/or managing agents failed to adequately supervise, train and direct its employees, and employing them with conscious disregard for the safety of Plaintiff and thereafter ratified the conduct of its employees.

97. Defendants SPM, CWB, and FINANCIAL implemented policies and procedures which permitted and encouraged the conduct of its employees and agents in this case and as such said Defendant consented, acquiesced, approved and ratified the behavior and conduct of its employees, including Does 1 through 20, and each of them in causing harm

22

to Plaintiff.

98.   Accordingly, Plaintiff is entitled to recover punitive damages from Defendants pursuant to California Civil Code § 3294, in an amount according to proof.

SPM argues that the allegations against it in the First Cause of Action fail to comply with Rule 9(b):

[N]ot only does Plaintiff continue to fall short of meeting the specificity requirements imposed by Rule 9(b), Plaintiff still fails ... to identify *any representation whatsoever* that Sierra Pacific allegedly made ... [¶] Far from pleading a viable fraud cause of action, Plaintiff cannot even describe one, single statement by Sierra Pacific on which such a claim might even *theoretically* stand.

Plaintiff responds that the allegations in Paragraphs 57 to 65 and 73-84 are very specific about the actions of SPM, including that SPM told people not to attend the closing. Plaintiff asserts that "[t]hese individuals would have explained the true terms of the loan to Plaintiff and Plaintiff would not have gone through with the transaction."

Paragraphs 57-65 of the SAC allege fraud against Defendants Financial, DeSilva and Norberg, not against SPM.  As to Paragraphs 73-84, SPM asserts: "where they mention Sierra Pacific at all - contain only a few lines about (a) no representative of Sierra Pacific being present at closing and (b) a purported instruction by Sierra Pacific that others need not be present, either, followed by an allegation that Sierra Pacific's underwriters should have known about allegedly fraudulent information placed on Plaintiff's loan application by *another*

23

1   Defendant."

2       SPM's motion to dismiss the First Cause of Action for fraud

3   is GRANTED WITH PREJUDICE.   The SAC alleges no fraudulent actions

4   against SPM and certainly without the specificity required by

5   Rule 9(b).  A mortgage is not a negotiable instrument unless and

6   until the requirements for negotiability have been satisfied.

7   The theory is contrived and based on a misapprehension of the law

8   of commercial paper.  Because Plaintiff has had multiple

9   opportunities to allege a claim for fraud against SPM upon which

10  relief can be granted, no further leave to amend is granted.

11      CWB moves to dismiss this cause of action.  With regard to

12  the allegations in Paragraphs 78 and 82 that "CWB misrepresented

13  to Plaintiff that Defendant CWB has the right to collect monies

14  from Plaintiff on its behalf or on behalf of others when

15  Defendant CWB had no legal right to collect such monies," and

16  that in "selling" this mortgage note Defendant SPM failed to

17  follow the basic legal requirements for the transfer of a

18  negotiable instrument and an interest in real property, in that

19  (1)there was not a proper and timely written assignment of the

20  deed of trust, (2) there was not a proper endorsement of the note

21  a person with authority to endorse the note, and (3) there was

22  not proper and timely delivery of the Note and acceptance of the

23  Note and Deed of Trust," CWB argues that these allegations are

24  "nothing more than the latest manifestation of the 'produce the

25  note" theory."2008   Because case law holds that California law

26  does not require production of the promissory note to initiate

24

foreclosure, *see, e.g., Putkkuri v. Recontrust Co.,* 2009 WL 32567 at *2 (S.D.Cal., Jan. 5, 2009); *Candelo v. Ndex West LLC,* 2008 WL 5382259 at *4 (E.D.Cal., Dec. 23, 2008), CWB asserts that it did not defraud Plaintiff by collecting loan payments without demonstrating that it is in possession of the original note.  The holder of a note secured by deed of trust may appoint any collection agent and need not transfer possession of the note to enable collection.  CWB further argues that the allegations of fraud are not pleaded with the required specificity: "Plaintiff has recited nothing but legal theories about why the sale of a promissory note might be flawed, without *any* facts that are relevant to this case."  Finally, CWB asserts that the allegations do not demonstrate that Plaintiff was damaged:

> Plaintiff does not contend that some other entity tried to collect loan payments as well as Countrywide.  Plaintiff signed a note and deed of trust in which he promised to make specified monthly payments, under the threat of foreclosure.  Countrywide, and nobody else, has sought to collect those payments.  If, hypothetically, someone else was entitled to those payments, that other person may have a claim against Countrywide.  But plaintiff has not shown how he has been damaged by making the loan payments that he promised he would make when he executed the note and deed of trust.

Plaintiff responds that Paragraphs 57-65 and 85-94 are very specific about the actions of CWB and believes the requirements of Rule 9(b) have been met.  Again, Paragraphs 57-65 of the SAC allege fraud against Defendants Financial, DeSilva and Norberg, not against CWB.  Paragraphs 85-94 pertain to CWB's alleged legal

inability to service the loan under U.C.C. Art. 3 and to Plaintiff's contention that CWB's representation that it was the loan servicer is fraudulent.

CWB's motion to dismiss the First Cause of Action is GRANTED.  Plaintiff's reliance on California Commercial Code § 3301 is misplaced in this context.  *See Blanco v. American Home Mortgage Servicing, Inc.*, 2010 WL 716311 at *2 (E.D.Cal., Feb. 26, 2010):

> Plaintiff also bases her theory of fraud against AHSMI on an erroneous theory. Specifically, plaintiff claims that AHSMI made misrepresentations to plaintiff when it 'represented ... that AHSMI has the right to collect monies' from her because AHSMI is not a 'person entitled to enforce' the mortgage note pursuant to California Commercial Code Section 3301. ... In that regard, plaintiff contends that defendants failed to properly endorse the note and physically deliver it, rendering the transfer of the note invalid. However, '[w]hen a mortgage is sold, physical transfer of the note is not required.' *Wood v. Aegis Wholesale Corp.*, 2009 U.S. Dist. LEXIS 57151, *14 (E.D.Cal. July 2, 2009) (citing *In re Golden Plan of Cal., Inc.* 829 F.2d 705, 708-11 (9th Cir.1986).  Accordingly, plaintiff has failed to identify any misrepresentations made by AHSMI or why AHSMI would know a statement that it had the right to service her loan was false.

Further, Plaintiff has not alleged facts from which it may be inferred that he was damaged by CWB's alleged misrepresentation. As CWB notes, Plaintiff agreed to make monthly payments pursuant to the terms of the promissory note and deed of trust when he obtained the loan from SPM.  Whether or not CWB is legally entitled to service Plaintiff's does not harm Plaintiff in the

26

1   absence of allegations that Plaintiff was also making loan

2   payments to a third party.

3        The First Cause of Action as to CWB is DISMISSED WITH

4   PREJUDICE.

5        C.   <u>FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA</u>

6   <u>ROSENTHAL ACT</u>.

7        CWB moves to dismiss the Fourth Cause of Action for

8   violation of the Rosenthal Fair Debt Collection Practices Act

9   ("RFDCPA") for failure to state a claim upon which relief can be

10  granted.

11       The February 16 Memorandum Decision dismissed this claim

12  with leave to amend, ruling:

13              The RFDCPA was enacted "to prohibit debt
                collectors from engaging in unfair or
14              deceptive acts or practices in the collection
                of consumer debts, and to require debtors to
15              act fairly in entering into and honoring such
                debts." Cal. Civ. Code § 1788.1.  Under the
16              RFDCPA, a "debt collector" is defined as "any
                person who, in the ordinary course of
17              business, regularly, on behalf of himself or
                herself or others, engages in debt
18              collection." Cal. Civ. Code § 1788.2(c).  The
                term "debt collection" means "any act or
19              practice in connection with the collection of
                consumer debts," § 1788.2(b), and "consumer
20              debt" means "money, property or their
                equivalent, due or owing or alleged to be due
21              or owing from a natural person by reason of a
                consumer credit transaction," § 1788.2(f).
22              In turn, "consumer credit transaction" means
                "a transaction between a natural person and
23              another person in which property, services or
                money is acquired on credit by that natural
24              person from such other person primarily for
                personal, family, or household purposes." §
25              1788.2(e).  A debt collector violates the act
                when it engages in harassment, threats, the
26              use of profane language, false simulation of

27

the judicial process, or when it cloaks its true nature as a licensed collection agency in an effort to collect a consumer debt. *See* Cal. Civ. Code. §§ 1788.10-1788.16.

Plaintiff alleges that Countrywide and Sierra Pacific violated the RFDCPA by "collecting on a debt not owed to the Defendants, making false reports to credit reporting agencies, falsely stating the amount of a debt, increasing the amount of debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means to collect a debt." (Doc. 14 at 13.) Plaintiff's RFDCPA claim is deficient in at least two respects.

First, "[t]he law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA." *Collins v. Power Default Servs., Inc.,* No. 09-4838 SC, 2010 WL 234902, at *3 (N.D. Cal. Jan. 14, 2010) (collecting numerous cases). "[F]oreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA." *Castenda v. Saxon Mortgage Servs., Inc.,* __ F. Supp. 2d __, 2009 WL 4640673, at *3 (E.D. Cal. 2009); *see also Gonzalez v. First Franklin Loan Servs.,* No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, at *7 (E.D. Cal. Jan. 11, 2010) ("[F]oreclosure related actions . . . do not implicate the RFDCPA."). The conduct Plaintiff complains of concerns foreclosure related actions in connection with his residential mortgage. This conduct is not covered by the RFDCPA. For this reason, Plaintiff's RFDCPA claim is subject to dismissal.

Second, the RFDCPA claim lacks any supporting facts. The complaint has no non-conclusory factual content to plausibly suggest that Countrywide and Sierra Pacific violated the RFDCPA by engaging in acts (such as harassment) prohibited by the statute. *See Keen v. Am. Home Mortgage Servicing, Inc.,* __ F. Supp. 2d __, 2009 WL 3380454, at *5 (E.D. Cal. 2009); *Gonzalez,* 2010 WL 144862 at *7.

After incorporating all preceding allegations, the Fourth

Cause of Action in the SAC alleges:

130. Plaintiff alleges that Defendant CWB is a debt collector within the meaning of the Rosenthal Act in that they [sic] regularly, in the course of their business, on behalf or themselves or others, engage in the collection of debt.

131. Defendant CWB used unfair and unconscionable means to collect a debt not owed to Defendant CWB or its principal by sending deceptive letters and making phone calls to Plaintiff demanding payment.

132. Defendant CWB made false reports to credit reporting agencies about Plaintiff's credit standing, falsely stating the amount of Plaintiff's mortgage debt, falsely stating that a debt was owed to Defendant CWB, and falsely stating Plaintiff's payment history.

133. Further, Defendant CWB increased the amount of Plaintiff's mortgage debt by stating amounts not permitted by law or contract, including, but not limited to, excessive service fees, attorneys' fees, and late charges.

Defendant CWB's actions have caused Plaintiff actual damages, including, but not limited to, loss of property, incurred attorneys' fees and costs to recover the Property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.

134. As a result of Defendant CWB's violations, Plaintiff is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs and reasonable attorneys' fees.

CWB argues that these allegations do nothing more than recite the language of the statutes and fail to set forth any

1   facts showing how CWB violated the RFDCPA.  *See Keen v. American*

2   *Home Mortg. Servicing, Inc.*, 644 F.Supp.2d 1086, 1095

3   (E.D.Cal.2009)(dismissing complaint where it failed to allege the

4   specific provisions of the RFDCPA were violated or any facts that

5   defendant used threats, harassment, or profane language to

6   collect a debt); *accord Rosal v. First Federal Bank of*

7   *California*, 671 F.Supp.2d 1111 (N.D.Cal.2009).

8        Plaintiff responds that the Fourth Cause of Action alleges

9   that CWB violated the RFDCPA in attempting to collect money from

10  Plaintiff and not just to enforce a security interest.  Plaintiff

11  cites *Ohlendorf v. American Home Mortgage Servicing*, 2010 U.S.

12  Dist. LEXIS 31098 at *18-20 (E.D.Cal., March 13, 2010):

13           California's Rosenthal Fair Debt Collection
             Practices Act ... prohibits creditors and
14           debt collectors from, among other things,
             making false, deceptive, or misleading
15           misrepresentations in an effort to collect a
             debt ... Pursuant to *Cal. Civ. Code Section*
16           *1788.17*, the Rosenthal Act incorporates the
             provisions of the federal Fair Debt
17           Collection Practices Act prohibiting
             '[c]ommunicating or threatening to
18           communicate to any person credit information
             which is known or which should be known to be
19           false.'  *15 U.S.C. § 1692e(8)*.

20           Plaintiff alleges that AHMSI violated the
             Rosenthal Act by making false reports to
21           credit reporting agencies, falsely stating
             the amount of debt, falsely stating a debt
22           was owed, attempting to collect said debt
             through deceptive letters and phone calls
23           demanding payment, and increasing plaintiff's
             debt by stating amounts not permitted,
24           including excessive service fees, attorneys'
             fees, and late charges ... AHMSI argues that
25           foreclosing on a property is not a collection
             of a debt, and so is not regulated by the
26           Rosenthal Act, that the alleged activities

30

resulted from plaintiff's default, and
plaintiff has not alleged when the violations
occurred.  AHMSI correctly points out that
foreclosure on a property securing a debt is
not debt collection activity encompassed by
[the] Rosenthal Act ... However, plaintiff's
allegations with respect to this cause of
action do not mention foreclosure, instead
alleging violations related to payment
collection efforts ... Further, the actions
of debt collectors under the act are not
immunized if plaintiff actually owed money.
Rather, the Rosenthal Act prohibits conduct
in collecting a debt, whether valid or not.
Accordingly, AHMSI's second argument is
without merit.  Lastly, as to AHMSI's third
argument, plaintiff has sufficiently alleged
the general time of the conduct he claims
violates the Rosenthal Act.  Specifically,
the court infers from the complaint, that the
alleged conduct occurred after plaintiff
stopped making his loan payments.  Thus,
AHMSI's motion to dismiss this claim is
denied.

See also Azzini v. Countrywide Home Loans, 2010 WL 962856 at *

(S.D.Cal., March 15, 2010)(denying motion to dismiss Rosenthal

Act claim based on allegations that Countrywide is a loan

servicer, it has collected mortgage payments from Plaintiffs, it

is a debt collector under the Rosenthal Act, and has engaged in

acts such as 'threatening and deceptive phone calls); Gumbs v.

Litton Loan Servicing, 2010 WL 1992199 at * 5 (E.D.Cal., May 13,

2010)(denying motion to dismiss Rosenthal Act claim based on

allegations that Litton made deceptive phone calls, sent letters,

and engaged in unlawful acts in an attempt to collect a debt it

was not lawfully owed).  Plaintiff also  cites Castrillo v.

American Home Mortg. Servicing, Inc., 2010 WL 1424398 (E.D.La.,

April 5, 2010), discussing the federal Fair Debt Collection

1  Practices Act, and noting that the Fifth Circuit in *Perry v.*
2  *Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985), held that a
3  "debt collector 'does not include ... a mortgage servicing
4  company, or an assignee of a debt, as long as the debt was not in
5  default at the time it was assigned."[2]

6      The only "debt" CWB is allegedly attempting to collect is a
7  residential mortgage loan, which is not a debt under the
8  Rosenthal Act.  Cases hold that a residential mortgage loan is
9  not a consumer debt within the meaning of the RFDCPA.  *See*
10 *Pontiflet-Moore v. GMAC Mortg.,* 2010 WL 432076 at *6 (E.D.Cal.,
11 Jan. 15, 2010); *Fuentes v. Duetsche Bank*, 2009 WL 1971610 at * 3
12 (S.D.Cal., July 8, 2009).  *Pittman v. Barclays Capital Real*
13 *Estate, Inc.,* 2009 WL 1108889 at 3 (S.D.Cal., April 24, 2009);
14 *Ines v. Countrywide Home Loans, Inc.*, 2008 WL 4791863 at * 3
15 (S.D.Cal., Nov. 3, 2008).  The cases cited by Plaintiff do not
16 address the definition of "consumer debt" within the meaning of
17 the Rosenthal Act.  A District Court judge is not bound by
18 decisions of other District Court judges, even in the same
19 district.  *Hernandez v. Balakian*, 2007 WL 1649911 at *6 n.2
20 (E.D.Cal., June 1, 2007).  If a residential mortgage loan is not
21 a debt under the RFDCPA for purposes of foreclosure, it makes no

22 ─────────────
23      [2]Plaintiff also cites *Wilson v. Draper & Goldberg, P.L.L.C.,*
   443 F.3d 373 (4th Cir.2006), where the Fourth Circuit held that
24 "Defendants could still be 'debt collectors' even if they were
   enforcing a security interest."  However, in *Odinma v. Aurora Loan*
25 *Services*, 2010 WL 2232169 at * 12 (N.D.Cal., June 3, 2010), the
   District Court rejected the plaintiff's reliance on *Wilson* as being
26 against the weight of authority.

1  sense to categorize it as a "consumer debt" when a loan servicing

2  company allegedly attempts to collect the debt by means other

3  than foreclosure.

4       CWB's motion to dismiss the Fourth Cause of Action is

5  GRANTED WITHE PREJUDICE.

6       D.  **SEVENTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA**

7  **BUSINESS & PROFESSIONS CODE**.

8       SPM and CWB move to dismiss the Seventh Cause of Action.

9       The February 16 Memorandum Decision dismissed this claim

10 with leave to amend:

> The complaint alleges that Countrywide, MERS, and Sierra Pacific engaged in "unlawful, unfair, and/or unfair business practices" in violation of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200 et seq. (Doc. 14 at 18.) The complaint does not assert any particular facts in support of this claim; rather, the pleading indiscriminately incorporates by reference all prior allegations in the complaint. (*Id.*)

> The UCL prohibits unfair competition including "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). "Each prong of the UCL is a separate and distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief." *Kearns*, 567 F.3d at 1127.

> As to the unlawful prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). As to the

"unfair" prong, "[a]n unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)). As to the fraudulent prong, "fraudulent acts are ones where members of the public are likely to be deceived." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).

Plaintiff's UCL claim has several deficiencies. First, to the extent Plaintiff asserts a UCL claim based on a violation of other law, his complaint fails to state a claim for a violation of TILA, RESPA, or any other law. Accordingly, to the extent the UCL claim is predicated on the violation of other law, it is insufficiently pled. Second, to the extent Plaintiff seeks to impose liability on Countrywide, MERS, or Sierra Pacific for "unfair" business practices, the complaint fails to indicate which particular acts or practices Plaintiff is relying upon to advance this claim, or what acts or practices each defendant did which constitute "unfair" acts or practices. Third, to the extent Plaintiff asserts a UCL claim that is based on or grounded in fraud, it must meet the requirements of Rule 9(b), *Kearns*, 567 F.3d at 1124-27, *Vess*, 317 F.3d at 1103-04, which it does not. The complaint fails to specify what particular role each defendant played in the fraudulent conduct or scheme, when and where the scheme occurred, or details on the specific misrepresentation involved in the fraudulent scheme.

The Seventh Cause of Action of the SAC, after incorporating all preceding allegations, alleges:

Defendant CWB

159. Defendant CWB's violation of the Rosenthal Act, their fraud, and illegal foreclosure activities, as alleged herein,

34

constitute unlawful, unfair, and/or
fraudulent business practices, as defined in
the California Business and Professions Code
§ 17200 et seq.

160.   Defendant CWB violated the Rosenthal
Act when it used unfair and unconscionable
means to collect a debt not owed to Defendant
CWB or its principal by repeatedly, over the
past year, sending threatening and deceptive
letters and making threatening and deceptive
phone calls to Plaintiff demanding payment in
violation of California Civil Code §1788.13,
when it repeatedly made false reports to
credit reporting agencies about Plaintiff's
credit standing, falsely stating the amount
of Plaintiff's mortgage debt, falsely stating
that a debt was owed to Defendant SPM and
falsely stating Plaintiff's payment history,
violating California Civil Code § 1788.13(f),
and when it increased the amount of
Plaintiff's mortgage debt by stating amounts
not permitted by law or contract, including,
but not limited to, excessive service fees,
attorneys' fees, and late charges, in
violation of California Civil Code
1788.10(f).

Defendant SPM

161.   Defendant SPM's fraud, breach of
contract, and breach of the implied covenant
of good faith and fair dealing, as alleged
herein, constitute unlawful, unfair, and/or
fraudulent business practices, as defined in
the California Business and Professions Code
§ 17200 et seq.

162.   Defendant SPM, committed negligence
when it breached its fiduciary duty when it
directly ordered, authorized and participated
in Defendant DESILVA's conduct, approved
anapplication with false information, and
placed Plaintiff into a loan which he could
not ultimately afford. In addition, Defendant
SPM, breached its duty of care to the
Plaintiff provide proper disclosures on or
before closing, properly maintain the
original Note, and properly assign or
transfer the Note.

35

1    163. Defendant SPM, committed fraud when it,
2    while acting in concert with Defendant
     DESILVA's tortious conduct, approved the loan
     to Plaintiff which he was unqualified for,
3    implemented unlawful lending practices, and
     engaged in fraudulent assignments for the
4    purposes of foreclosure.

5    164.  Defendant SPM breached its contract,
     implied covenant of good faith and fair
6    dealing, and fiduciary duty when it ordered,
     authorized, and participated in Defendant
7    DESILVA's conduct, approved an application
     with false information, failed to provide
8    proper disclosures at closing, failed to
     allow Plaintiff to review the final loan
9    documents, and failed to explain any of the
     final loan documents to Plaintiff at closing.
10   Defendant SPM, also breached by failing to
     exercise reasonable efforts and due diligence
11   as promised, engaged in the above mentioned
     wrongful acts, and thus failed to provide
12   Plaintiff with an affordable loan.

13       The Seventh Cause of Action prays for, among other things,

14   reasonable attorney's fees.  SPM, citing *America Online, Inc. v.*

15   *Superior Court*, 90 Cal.App.4th 1, 16 n.10 (2001), asserts that

16   attorney's fees are not recoverable by a plaintiff in an UCL

17   action.  In *Walker v. Countrywide Home Loans, Inc.*, 98

18   Cal.App.4th 1158, 1179 (2002), the Court ruled that, although the

19   unfair competition law does not provide for attorney's fees, if a

20   plaintiff prevails on an unfair competition law claim, it may

21   seek attorney's fees as a private attorney general pursuant to

22   Code of Civil Procedure § 1021.5.  At the hearing, Plaintiff

23   conceded that attorney's fees pursuant to the Seventh Cause of

24   Action are not recoverable.  SPM's request to strike the request

25   for attorney's fees is GRANTED.

26       CWB argues that the Seventh Cause of Action must be

                                  36

dismissed against it because the allegations of violation of the RFDCPA which CWB asserts are conclusorily alleged. *See discussion supra.* Because Plaintiff's claim for relief against CWB for violation of RFDCPA is granted without leave to amend, the Seventh Cause of Action as against CWB is DISMISSED WITH PREJUDICE.

SPM moves to dismiss the Seventh Cause of Action to the extent it is based on breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and breach of fiduciary duty. None of these claims are alleged against SPM in the SAC.

Plaintiff cites *Baldain v. American Home Mortg. Servicing, Inc.*, 2010 WL 56143 (E.D.Cal., Jan. 5, 2010) as holding that "allegations of negligence, breach of TILA and unfair debt collection are sufficient to support a cause of action for unfair competition."

However, the SAC does not allege these claims against SPM and the breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and breach of fiduciary duty upon which the Seventh Cause of Action rests are not asserted against SPM.

To the extent the Seventh Cause of Action is based on SPM's alleged fraud, because the First Cause of Action is not adequately pleaded and is dismissed without leave to amend, *see discussion supra*, the Seventh Cause of Action as against SPM is DISMISSED WITH PREJUDICE.

**CONCLUSION**

For the reasons stated:

1.   Defendants Countrywide Bank and Sierra Pacific Mortgage Company, Inc.'s motions to dismiss the First, Fourth and Seventh Causes of Action is GRANTED WITHOUT LEAVE TO AMEND;

2.   Counsel for Defendants shall prepare and lodge a form of order consistent with this Memorandum Decision within five (5) court days following service of this Memorandum Decision.

IT IS SO ORDERED.

Dated:   __July 13, 2010__                    _____/s/ Oliver W. Wanger_____
                                        UNITED STATES DISTRICT JUDGE