IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT SIPE,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTRY WIDE BANK, et al.,<br><br>        Defendants. | Case No. 1:09-cv-00798 JLT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>(Doc. 83) |

Plaintiff Vincent Sipe ("Plaintiff") seeks the entry of default judgment against defendants John Norberg ("Norberg") and Carol DeSilva ("DeSilva"). (Doc. 83). The Court reviewed Plaintiff's motion and supporting documents, and heard oral argument on May 24, 2012. Although Plaintiff was given the opportunity to submit additional evidence in support of his motion, he failed to do so.[1]

Based upon the Court's order dismissing the matter against Defendant DeSilva, the motion for default judgment as to defendant Carol DeSilva is DENIED as MOOT. For the following reasons, Plaintiff's motion for default judgment as to defendant John Norberg is **GRANTED IN PART** and **DENIED IN PART**.

///

---

[1] This is just the latest failure in a string of failures to comply with Court orders and to prosecute this action. (Docs. 76, 79, 81, 84, 86, 91)

1

**I. Procedural History**

On May 4, 2009, Plaintiff filed his initial complaint against multiple defendants, including John Norberg and his employer Financial Advantage, Inc.[2] (Doc. 1). Plaintiff amended the complaint twice after the Court granted several defendants' motions to dismiss; thus, the Second Amended Complaint is the operative complaint. (Docs. 8, 13, 15, 16, 39, 42, 43, 56). As to Norberg, the only remaining defendant, Plaintiff alleges causes of action for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, breach of fiduciary duty, violations of California Business and Professions Code §17200, et seq. Plaintiff premises his causes of action against Norberg on the fact that Norberg sold Plaintiff the mortgage at issue in the case, as Norberg was the real estate broker of record for the lending company used by Plaintiff. (Doc. 41 at 4).

Norberg failed to respond to the Complaint within the time prescribed by the Federal Rules of Civil Procedure. Plaintiff filed a request for entry of default judgment as to Carol DeSilva, Financial Advantage, Inc., and John Norberg on November 1, 2010. (Doc. 61). Pursuant to Fed.R.Civ.P. 55(a), default was entered against Norberg on November 2, 2010. (Doc. 62). However, Plaintiff's Request for Entry of Default was declined as to the other defendants, as Plaintiff had not filed a proof of service on them with the Court. (Doc. 63 and 64). A prove up hearing was held on April 18, 2011 against Defendant Sierra Pacific Mortgage ("SPM") only, as Plaintiff had represented to the Court that he intended to dismiss Defendants Norberg and DeSilva. (Doc. 74 and 76). At that time, the Court requested documentation to show Plaintiff was entitled to a default judgment. The Court therefore granted Plaintiff's oral request to submit calculations and a default package to the Court. (Id.)

Plaintiff submitted his application for default judgment on August 1, 2011. (Doc. 75). On September 21, 2011, the Court denied Plaintiff's Application for Default Judgment. (Doc. 76). The Court explained in his order that at the prove-up hearing that default judgment had not been entered against SPM and that SPM had actually been dismissed without leave to amend nearly a

---

[2] All Defendants, with the exception of Norberg, have been dismissed. (See Docs. 53, 56, 70, 86, and 91).

2

year before the prove up hearing. (Id.) The Court noted also that the application made no mention of SPM and, despite the fact the default judgment was requested against Norberg, the application only contained evidence against DeSilva. (Doc. 76 at 2). In all, the Court found the application wholly insufficient to establish default judgment as to any defendant. (Id.) The Court instructed Plaintiff that if he wished to pursue default judgment against any remaining defendant, he **must** submit his motion within thirty days of service of the Court's September 21, 2011 order. (Id.)

Plaintiff did not file his instant Application for Default Judgment until January 10, 2012, nearly four months after the date ordered by the Court and Plaintiff failed to set the matter for hearing. (Doc. 83). Thus, the Court set Plaintiff's motion for default judgment for May 17, 2012 and ordered Plaintiff to serve Norberg with the motion and notice of hearing by May 2, 2012 and file the proof of service with the Court at least 5 days before the hearing. (Doc. 87). On April 27, 2012, Plaintiff filed a Certificate of Service with the Court which indicated that he served a "Proof of Service of Notice of Hearing on Application for Default Judgment by Court; Memorandum of Points and Authorities" on John Norberg via U.S. mail. This Court later continued the hearing to May 24, 2012. (Doc. 93).

At the May 24, 2012 hearing, the Court noted that Plaintiff's motion failed to set forth the lawful measure of damages. Rather than seeking the damages that flowed from the wrongful loan, Plaintiff sought the value of the wrongful loan and all payments made toward that loan. (Doc. 94). In essence, Plaintiff sought a windfall. Counsel admitted this was not the proper damage amount and requested additional time to provide evidence, in the form of an expert declaration, which would set forth Plaintiff's lawful damages. Plaintiff's additional evidence was due on July 6, 2012. (Doc. 94)

On July 5, 2012, Plaintiff filed a declaration seeking 90 days additional to submit supplemental evidence. (Doc. 95) At that time, Counsel for Plaintiff reported that he had met with various experts but had not yet been able to obtain the needed declarations. Id. The Court granted Plaintiff's request, in part, and allowed Plaintiff an additional 60 days to file the necessary declaration(s). (Doc. 96). Plaintiff failed to file any additional evidence in the time

frame ordered by the Court.  Based upon the evidence before this Court, the Court **GRANTS IN PART** and **DENIES IN PART**, Plaintiff's motion for default judgment.

### II.   Legal Standards for Default Judgment

When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment.  Fed.R.Civ.P. 55(a)-(b).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.  Pope v. United States, 323 U.S. 1, 22 (1944); *see also* Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).  In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.  Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default judgment is disfavored.  Id. at 1472.

### III. Plaintiff's Second Amended Complaint

According to Plaintiff, DeSilva, Norberg, and Financial sold Plaintiff the mortgage at issue here. (Dco. 41 at 4).  DeSilva was the loan officer, Defendant Norberg was the real estate broker, and Financial was the lending institution.  (Id.)  Plaintiff alleges that Financial and Norberg placed Plaintiff into a predatory loan with "toxic" terms to force him to refinance his

4

1  loan in the near future.  (Doc. 41 at 7).  Plaintiff contends that Norberg and Financial did this for
2  their financial gain.  (Doc. 41 at 7).

3  Plaintiff contends that on March 1, 2008, DeSilva approached Plaintiff, identified herself
4  as a loan officer for Financial and "solicited" him to refinance his residence.  (Doc. 41 at 8).
5  DeSilva told Plaintiff she could get him the "best deal" and the "best interest rates" available on
6  the market.  (Doc. 41 at 8, Doc. 83 at 3).

7  Plaintiff asserts that during the application process, he submitted accurate documentation
8  of his income, but alleges that DeSilva overstated his income on the loan application without his
9  knowledge or permission.  (Doc. 41 at 8; Doc. 83 at 3).  The loan documents stated his income as
10 $7,800 per month, when it was actually $4,800 per month.  (Doc. 41 at 8.; (Doc. 83 at 4).
11 Plaintiff claims DeSilva did this in order to qualify Plaintiff for the refinance, as he would not
12 have qualified at his actual income level.

13 Plaintiff alleges that DeSilva told him he could get 100% financing.  He later learned that
14 instead of a loan with 100% financing, DeSilva sold him a predatory loan: the loan for
15 $286,000.00 had an initial interest rate of 2.0% for one month, then adjusted to 9.95% "based
16 upon a 12 month MTA index) plus 2.9%, negatively amortized 115%."  (Doc. 41 at 8).  Plaintiff's
17 fully amortized payment was $2,083.43.  (Id).

18 Plaintiff alleges DeSilva received $4,290 in yield spread premiums and $1,840 in
19 origination fees for Plaintiff's loan.  Plaintiff claims DeSilva told him that if the loan ever became
20 unaffordable, she would refinance it into an affordable loan.  (Doc. 41 at 9).

21 Before closing, Plaintiff did not receive any of the loan documents nor was he allowed to
22 review the documents.  Plaintiff alleges that the loan was subject to finance charges and contained
23 added costs that were not proper under the terms of the Note or law.  Plaintiff also claims
24 Norberg, as an agent of the Lender, should have provided Plaintiff with disclosures to inform him
25 of these terms.  Plaintiff further contends that he was not given the required copies of a proper
26 notice of cancellation. Plaintiff asserts that the specific facts regarding the loan were purposefully
27 hidden from him to prevent him from learning of the true nature of the loan.

28 Plaintiff completed the loan on the property on June 1, 2006.

## IV. Application of <u>Eitel</u> Factors

Applying the factors articulated by the Ninth Circuit in <u>Eitel</u> to the facts above, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A. Prejudice to Plaintiff

The first factor the Court considers is whether Plaintiff would suffer prejudice if default judgment is not entered. *See* <u>Pepsico, Inc</u>., 238 F.Supp.2d at 1177. Potential prejudice to a plaintiff militates in favor of granting a default judgment. <u>Id.</u> In general, where default has been entered against a defendant, a plaintiff has no other alternative by which to recover damages. <u>Id.</u>; <u>J & J Sports Productions v. Rodriguez</u>, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). With the exception of Norberg, all of the previously named defendants have been dismissed by the Court. Since Norberg has not appeared, it appears that Plaintiff has no opportunity to litigate the case on its merits and therefore has no other avenue by which he may recover damages.

### B. Merits of Plaintiff's Claims and Sufficiency of the Complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See* <u>J & J Sports Productions v. Hernandez</u>, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." <u>Pepsico, Inc</u>., 238 F.Supp.2d at 1175 (citing <u>Kleopping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

#### 1. Fraud

Plaintiff relies on California Civil Code section 1709 to support his claim that Defendant Norberg deceived Plaintiff and induced Plaintiff to proceed with a loan on terms that were not favorable to Plaintiff. (Doc. 83 at 6). Plaintiff contends that Norberg is liable for damages because Plaintiff would not have entered into the loan, if he had properly disclosed the terms of the loan. (<u>Id</u>.)

Under California law, Plaintiff must show the following to establish fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

6

Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572. The burden to establish fraud is "heavy," Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990), because "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009), quoting Fed. R. Civ. P. 9(b).

Here, Plaintiff makes the following general allegations:

> . . . that Defendants Desilva, Norberg, and Financial, each made false representations to Plaintiff regarding material facts, including but not limited to, [sic] interest rate attached to the Plaintiff's loan, financing options, availability of refinancing, and Plaintiff's qualification for this loan, at the inception of this transaction, designed to fraudulently to induce Plaintiff to enter into this transaction

(Doc. 41 at 12).

However, the only specific statements and assurances about the loan set forth in the Second Amended Complaint are attributed to DeSilva. (Doc. 41 at 12-14.) Despite this, Plaintiff's Application for Default Judgment attributes DeSilva's statements to Norberg as well. (Doc. 83). Plaintiff's Application claims that because Defendant John Norberg was DeSilva's supervisor, Norberg was working "directly with Defendant DeSilva" at the time DeSilva solicited Plaintiff to refinance his home. (Doc. 83 at 3).

The allegations for fraud against Defendant Norberg have not been plead with specificity sufficient to meet the standards of Rule 9(b), because "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 576 F.3d at 1124, citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1120 (9th Cir. 2003); *see also* Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2004) (allegations of fraud must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations") (internal quotation marks and citation omitted). Plaintiff's SAC fails to allege when or by what means Defendant Norberg made knowingly false representations to Plaintiff. He seems to set forth several assurances that were made by Carol DeSilva, and merely attributes those same statements to Norberg based on his supervisory role. While Plaintiff alleges he suffered economic damages as a result of entering

into the loan, he has not set forth facts to demonstrate "justifiable reliance" or "intent to deceive" by Defendant Norberg. Thus, Plaintiff has failed to state a claim for fraud against Norberg.

### 2. Breach of Contract

To establish breach of contract under California law, Plaintiff must establish that there was a contract under which Plaintiff performed or had an excuse for non-performance, and that Norberg breached the contract, which resulted in damages to Plaintiff. Wall Street Network, Ltd. v. New York Times, Co., 164 Cal.App.4th 171, 178, 80 Cal.Rptr.3d 6 (2008) ("The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom.").

With respect to an oral contract to restructure the terms of a loan, the agreement must embody definite terms, capable of enforcement, in order to constitute a legal contract. Wong v. Am. Servicing Co., Inc., 2009 WL 5113516 *10 (E.D. Cal. Dec. 18, 2009) (citing Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 483 (1st Dist.1989) (noting that "the terms of a restructuring agreement obviously may vary as widely as the terms of the original agreement"). "Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement." Wong, 2009 WL 5113516 *10. (quoting Kruse v. Bank of Am., 202 Cal.App.3d 38, 59, 248 Cal.Rptr. 217 (1st Dist.1988)). Moreover, the mere "understanding" that a loan or mortgage would be restructured is insufficient to state a claim for breach of contract. Wong, 2009 WL 5113516 *10.

Plaintiff does not allege that the terms of the contract were ambiguous. Rather, he claims that Norberg wrongfully induced him to enter into a contract with unfair terms and failed to provide adequate assistance during the formation of the contract. Specifically, Plaintiffs alleges that Norberg breached the loan agreement with him when he misled Plaintiff as to the type of loan and the monthly payments. Despite such allegations in the Application, Plaintiff fails to identify any contract that obligated Norberg to conduct himself in a particular manner with respect to these allegations. *See* Wong, 2009 WL 5113516 *10. Accordingly, Plaintiff has failed to state a claim for breach of contract claim against Norberg.

///

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's SAC alleges the following:

Defendants DESILVA, FINANCIAL, NORBERG, and each of them, breached the implied duty of good faith and fair dealing owed to Plaintiff by, among other things, performing acts and failing to act as alleged herein, and by failing to perform the duties specifically enumerated herein. Defendants further breached the duty of good faith and fair dealing by:

   a. Failing to pay at least as much regard to Plaintiff's interests as to Defendants' interests;

   b. Failing to disclose to Plaintiff the true nature of the loan that is the subject of this action;

   c. Failing to give Plaintiff the requisite notice and disclosures;

   d. Directing Plaintiff into a toxic loan.

(Doc. 41 at 21).

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." Wong, 2009 WL 5113516 *11 (quoting Smith v. City & County of San Francisco, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." Wong, 2009 WL 5113516 *11 Fortaleza v. PNC Fin. Servs. Group, Inc., 2009 U.S. Dist. LEXIS 64624, at 15-16, 2009 WL 2246212 (N.D.Cal. July 27, 2009). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." Wong, 2009 WL 5113516 *11 (quoting Pasadena Live, LLC v. City of Pasadena, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004)).

Under California law, "no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d 1142, 1154-55 (E.D. Cal. 2010) (quoting Pension Trust Fund v. Federal Ins. Co., 307 F.3d 944, 955 (9th Cir.2002) (applying California law and citing Mitsui Mfrs. Bank v. Superior Court, 212 Cal.App.3d 726,

730, 260 Cal.Rptr. 793 (1989)). Further, the implied covenant "does not require parties to negotiate in good faith prior to any agreement." McClain, 159 Cal.App.4th at 799, 71 Cal.Rptr.3d 885.

This claim fails for the same reason the contract claim above fails. Plaintiff's SAC failed to plead facts to identify the existence of a valid contract between Plaintiff and Norberg other than the loan agreement, Plaintiff has failed to state that any of these alleged contractual duties were incorporated into the specific terms of the loan agreement, and Plaintiff has not alleged the existence of any "special relationship" between him and Norberg to invoke the implied covenant. *See* Lingad, 682 F. Supp. 2d at 1155.  Accordingly, Plaintiff has failed to state a claim against Norberg under the implied covenant of good faith and fair dealing.

**4.   Negligence**

The fifth cause of action in Plaintiff's SAC alleges that all defendants Financial, Norberg, and DeSilva were negligent in directing Plaintiff into a loan that he may not have qualified for by industry standards, resulting in unnecessarily increased fees, which defendants knew were in excess of what Plaintiff could afford. (Doc. 41 at ¶138).

The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." Wong, 2009 WL 5113516 *6 (citing Mendoza v. City of Los Angeles, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998). "The question of the existence of a legal duty of care ... presents a question of law which is to be determined by the courts alone." First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir.2000). "Absent the existence of duty ..., there can be no breach and no negligence." Nichols v. Keller, 15 Cal.App.4th 1672, 1683, 19 Cal.Rptr.2d 601 (1993); Nymark *v.* Heart Fed. Savings & Loan Assn*.,* 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (3d Dist.1991) ("The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence.") (citations omitted).

Plaintiff alleges that as Plaintiff's real estate broker, Norberg owed him a fiduciary duty. (Doc. 41 at ¶13).  Given the facts alleged by Plaintiff in his claim for Breach of Fiduciary duty,

10

Plaintiff has pled sufficient facts to support a claim for negligence against Norberg. (See Breach of Fiduciary Duty section, discussed below).

### 5. Breach of Fiduciary Duty

"The elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage." Brewer v. Indymac Bank, 609 F. Supp. 2d 1104, 1119-20 (E.D. Cal. 2009) (citing Pellegrini v. Weiss, 165 Cal.App.4th 515, 524, 81 Cal.Rptr.3d 387 (2008)). A mortgage broker owes a fiduciary duty to their client. *See* Cal. Civ. Code § 2079.24; Brewer, 609 F. Supp. 2d at 1119 (citing Zimmer v. Nawabi, 566 F.Supp.2d 1025 (E.D.Cal.2008)). Under California law, a mortgage broker acts in a fiduciary capacity that "not only imposes upon him the duty of acting in the highest good faith toward his principal but also precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency." Brewer, 609 F. Supp. 2d at 1119 (citing Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 782, 157 Cal.Rptr. 392, 598 P.2d 45 (1979) and Batson v. Strehlow, 68 Cal.2d 662, 674-75, 68 Cal.Rptr. 589, 441 P.2d 101 (1968)). This duty obligates brokers to "make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals." Brewer, 609 F. Supp. 2d at 1119 (citing Wyatt, 24 Cal.3d at 782, 157 Cal.Rptr. 392, 598 P.2d 45 and Rattray v. Scudder, 28 Cal.2d 214, 223, 169 P.2d 371 (1946)). Accordingly, a broker is liable to his principal for secret profits. Brewer, 609 F. Supp. 2d at 1119 (citing Roberts v. Lomanto, 112 Cal.App.4th 1553, 5 Cal.Rptr.3d 866 (2003)).

Accepting the allegations of Plaintiff's SAC as true, Norberg was Plaintiff's mortgage broker and thus owed Plaintiff a fiduciary duty. (Doc. 41 at ¶13). Plaintiff alleges that Norberg breached his fiduciary duty by obtaining a loan for him with unfavorable terms that he could not afford, by failing to disclose the negative consequences of the loan, and securing secret profits. (Doc. 41 at ¶150). Plaintiff further alleges he suffered harm as a proximate result of Norberg's breach. (Id. at ¶156). Finally, Plaintiff alleges that by deliberately breaching his fiduciary duty, Norberg acted with malice, fraud, wantonness, oppression, and entire want of care to Plaintiff's

1  rights. (Id. at ¶157). As such, Plaintiff has sufficiently alleged that Norberg intentionally and
2  fraudulently breached fiduciary duties owed to him.

### 6. California Business and Professions Code §17200, et seq.

Under §17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Therefore, there are three prongs under which a claim may be established under §17200. Daro v. Superior Court, 151 Cal.App.4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition"); Lozano v. AT&T Wireless Servs., 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability"). Further, a claim under § 17200 must rest on a violation of another law. Farmers Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992). Here, Plaintiff claims Norberg's "negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing" constitute unlawful, unfair, and/or fraudulent business under California Business & Professions Code § 17200. (Doc. 41 at ¶166).

#### a. Unlawful act or practice

Actions prohibited by § 17200 include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39, 33 Cal.Rptr.2d 438 (1994). Thus, the "unlawful" prong requires an underlying violation of law. Krantz v. BT Visual Images, 89 Cal.App.4th 164, 178, 107 Cal.Rptr.2d 209 (2001). Here, as detailed above, Plaintiff has established Norberg violated breached a fiduciary duty owed to Plaintiff.

#### b. Unfair act or practice

A claim under the "unfair" prong requires "conduct threatening incipient violation of antitrust laws, or violates the policy or spirit of those laws . . . , or otherwise significantly threatens or harms competition." Cal-Tech Communications v, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). In this case, Plaintiff has not alleged a violation of antitrust laws. Likewise, he has not shown the actions of

1. Norberg threatened or harmed competition.

### c. Fraudulent act or practice

A "fraudulent" act under § 17200 is "one which is likely to deceive the public," and "may be based on misrepresentations . . . which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1474, (2006).  Thus, the term "fraudulent" under §17200 "does not refer to the common law tort of fraud," Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th 638, 645 (Ct. App. 2008), but still requires allegations that the misrepresentation was directly related to injurious conduct, and that the claimant actually relied on the alleged misrepresentation. In re Tobacco II Cases, 46 Cal.4th 298, 36-27 (2009).  Nevertheless, claims based upon the "fraudulent" prong of §17200 remain subject to the heightened pleading requirements of Rule 9(b). Kearns, 567 F.3d at 1124-25; Meridian Project Sys., 404 F.Supp.2d at 1219.  Because Plaintiff failed to plead the circumstances surrounding fraud with particularity, his claim for fraudulent practices under § 17200 fails as well.

### C. Sum of Money at Stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Pepsico, Inc., 238 F.Supp.2d at 1176. Here, Plaintiff prays for judgment in the amount of $429,456.34. Plaintiff breaks down this amount as follows:

1) $374,648.64 for compensatory damages including,
   a. $286,000.00 for the amount of the loan;
   b. $5,093.59 for out of pocket closing costs paid by Plaintiff;
   c. $8,887.45 for "out of pocket costs Defendants DeSilva and Norberg received from the loans sold to Plaintiff;
   d. $74,016.60 in payments made by Plaintiff on the current loan;
   e. $651 in pre-payment penalties associated with the prior loan Plaintiff refinanced
2) $410.00 for costs of litigation (including filing fee and fee for service on

defendant;

3) $5005.00 for attorney fees; and

4) $49,392.70 for pre-judgment interest

Given the substantial amount of money at stake, this factor weighs against the entry of default judgment. *See, e.g.,* Joe Hand Promotions v. Streshly, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J & J Sports Productions v. Cardoze, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *but see* Hernandez, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against entry of default judgment).

### 1) Prejudgment Interest

The Prayer for Damages alleged in Plaintiff's SAC does not request pre-judgment interest. Therefore Plaintiff cannot recover any amount for pre-judgment interest. *See* Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010) (citing Fed.R.Civ.Proc. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings") and Silge v. Merz, 510 F.3d 157, 160-61 (2d Cir.2007) (affirming the denial of prejudgment interest in connecting with a default judgment where plaintiff did not expressly pray for prejudgment interest in the complaint, and stating that, "[b]y limiting damages to what is specified in the 'demand for judgment,' [Rule 54(c) ] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer").

### 2) Compensatory Damages, Attorney's Fees, and Costs

California law explains Plaintiff's measure of damages as follows:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

Cal. Civ. Code § 3333 (West).

Contrary to Plaintiff's request for relief, the Court finds the proper measurement of damages for Norberg's breach of fiduciary duty is the difference paid by Plaintiff due to the increased interest rate as calculated over the entire 30 year term of the loan. *See* Smith v. Home Loan Funding, Inc., 192 Cal. App. 4th 1331, 121 Cal. Rptr. 3d 857 (2011), as modified on denial of reh'g (Mar. 28, 2011). To award Plaintiff the full value of the loan that Plaintiff received, plus the payments he made on the new loan would serve as a complete windfall to Plaintiff.

Based upon the Closing Documents, it appears Plaintiff's prior loan had an interest rate of 8.625%, but Plaintiff has not provided the Court with the monthly payment he had prior to the loan at issue. Because Plaintiff has failed to produce evidence of the increased amount Plaintiff paid in interest over the term of the loan due to the new interest rate(s), if any, the Court lacks evidence to support any award of damages to Plaintiff for out-of-pocket expenses related to his payments under the new loan. To award Plaintiff the full value of the loan that he received, plus the payments he made on the new loan would serve as a windfall.

Additionally, Plaintiff alleges expenses of $5,093.59 for out of pocket closing costs paid by Plaintiff; however, the Court is unable to locate this amount in the closing documents provided to the Court. (Doc. 83-1). Likewise, the Court has identified the $4,290 yield spread premium, but has not been able to locate the $8,887.45 for "out of pocket costs Plaintiff claims Defendants DeSilva and Norberg received from the loans sold to Plaintiff." (Id. at 2-4, 7 and 10). Plaintiff also claims $651 in pre-payment penalties associated with the prior loan Plaintiff refinanced; however the closing documents only seem to indicate $350 for prepayment penalty (Id. at 6). Plaintiff was given an opportunity to supplement his evidence in order to clarify these issues and has failed to do so. (Doc. 94 and 96). With regard to the out-of-pocket expenses described above, the evidence before this Court only supports an award of $350 for the pre-payment penalty.

Finally, Plaintiff's request for costs of litigation at $410.00 (including filing fee and fee for service) on Defendant appears appropriate. On the other hand, Plaintiff's prayer for relief, which requests $5005.00 for attorney fees (for 14 hours at $350.00 per hour) is not reasonable in light of the failure detailed in footnote 1 above and the extremely limited success in this case due

to counsel's lack of diligence. Counsel's request for fees that are more 10 times the amount of the recovery is unconscionable especially in light of the fact that the size of the recovery is due, it appears, to counsel's mismanagement of this case. Thus, the Court **DENIES** the request for fees.

### D. Possibility of Dispute Concerning Material Facts

The Court also considers the possibility of dispute as to any material facts in the case. Generally, where a defendant is in default there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendant has not made any effort to challenge the Complaint or otherwise appear in this case. *See* Pepsico, Inc., 238 F.Supp.2d at 1177. Therefore, this factor weighs in favor of granting default judgment.

### E. Whether Default Was Due to Excusable Neglect

Generally, the Court will consider whether Mr. Norbert's failure to answer is due to excusable neglect. *See* Eitel, 782 F.2d at 1472. Here, Mr. Norbert was properly served with the Summons and Complaint. (Doc. 61-62). Moreover Norberg received notice of the initial hearing on Plaintiff's motion for default judgment and did not respond. (Doc. 92). Given these circumstances, it is unlikely that Norberg's failure to answer, and the resulting defaults entered by the Clerk of Court, was a result of excusable neglect. See Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Mr. Norbert's failure to answer the Complaint makes a decision on the merits somewhat impractical. However, the policy underlying the Federal Rules of Civil Procedure favors decisions on the merits and therefore weighs against Plaintiff.

## VI. Conclusion

16

Given the issues discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's request for entry of default judgment against John Norbert, individually, and awards the following:

1. Plaintiff's request for the full value of the loan and the payments made on the loan is **DENIED**;

2. Plaintiff is **AWARDED** costs of litigation in the amount of $410.00;

3. Plaintiff's request attorneys' fees in the amount of $5005.00 is **DENIED**;

4. Plaintiff is **AWARDED** reimbursement for a pre-payment penalty in the amount of $350.00; and

5. Plaintiff's request for pre-judgment interest is **DENIED**.

IT IS SO ORDERED.

Dated:   **September 12, 2012**                       **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE