1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  VINCENT SIPE,

12          Plaintiff,

13      v.

14  COUNTRY WIDE BANK, et al.,

15          Defendants.

16

Case No. 1:09-cv-00798 JLT

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT**

(Doc. 83)

17      Plaintiff Vincent Sipe ("Plaintiff") seeks the entry of default judgment against defendants

18  John Norberg ("Norberg") and Carol DeSilva ("DeSilva").  (Doc. 83).  The Court reviewed

19  Plaintiff's motion and supporting documents, and heard oral argument on May 24, 2012.

20  Although Plaintiff was given the opportunity to submit additional evidence in support of his

21  motion, he failed to do so.[1]

22      Based upon the Court's order dismissing the matter against Defendant DeSilva, the

23  motion for default judgment as to defendant Carol DeSilva is DENIED as MOOT.  For the

24  following reasons, Plaintiff's motion for default judgment as to defendant John Norberg is

25  **GRANTED IN PART** and **DENIED IN PART**.

26  ///

27

[1] This is just the latest failure in a string of failures to comply with Court orders and to prosecute this action. (Docs. 76, 79, 81, 84, 86, 91)

28

1    **I. Procedural History**

2        On May 4, 2009, Plaintiff filed his initial complaint against multiple defendants, including

3    John Norberg and his employer Financial Advantage, Inc.[2]   (Doc. 1).   Plaintiff amended the

4    complaint twice after the Court granted several defendants' motions to dismiss; thus, the Second

5    Amended Complaint is the operative complaint.   (Docs. 8, 13, 15, 16, 39, 42, 43, 56).   As to

6    Norberg, the only remaining defendant, Plaintiff alleges causes of action for fraud, breach of

7    contract, breach of the implied covenant of good faith and fair dealing, negligence, breach of

8    fiduciary duty, violations of California Business and Professions Code §17200, et seq.   Plaintiff

9    premises his causes of action against Norberg on the fact that Norberg sold Plaintiff the mortgage

10   at issue in the case, as Norberg was the real estate broker of record for the lending company used

11   by Plaintiff.  (Doc. 41 at 4).

12       Norberg failed to respond to the Complaint within the time prescribed by the Federal

13   Rules of Civil Procedure.   Plaintiff filed a request for entry of default judgment as to Carol

14   DeSilva, Financial Advantage, Inc., and John Norberg on November 1, 2010.   (Doc. 61).

15   Pursuant to Fed.R.Civ.P. 55(a), default was entered against Norberg on November 2, 2010.  (Doc.

16   62).  However, Plaintiff's Request for Entry of Default was declined as to the other defendants, as

17   Plaintiff had not filed a proof of service on them with the Court.  (Doc. 63 and 64).   A prove up

18   hearing was held on April 18, 2011 against Defendant Sierra Pacific Mortgage ("SPM") only, as

19   Plaintiff had represented to the Court that he intended to dismiss Defendants Norberg and

20   DeSilva.  (Doc. 74 and 76).   At that time, the Court requested documentation to show Plaintiff

21   was entitled to a default judgment.   The Court therefore granted Plaintiff's oral request to submit

22   calculations and a default package to the Court.  (Id.)

23       Plaintiff submitted his application for default judgment on August 1, 2011.  (Doc. 75).   On

24   September 21, 2011, the Court denied Plaintiff's Application for Default Judgment.  (Doc. 76).

25   The Court explained in his order that at the prove-up hearing that default judgment had not been

26   entered against SPM and that SPM had actually been dismissed without leave to amend nearly a

27
     _____

28          [2] All Defendants, with the exception of Norberg, have been dismissed.  (See Docs. 53, 56, 70, 86, and 91).

1    year before the prove up hearing.  (Id.)  The Court noted also that the application made no

2    mention of SPM and, despite the fact the default judgment was requested against Norberg, the

3    application only contained evidence against DeSilva.  (Doc. 76 at 2).  In all, the Court found the

4    application wholly insufficient to establish default judgment as to any defendant.  (Id.)   The

5    Court instructed Plaintiff that if he wished to pursue default judgment against any remaining

6    defendant, he **must** submit his motion within thirty days of service of the Court's September 21,

7    2011 order.  (Id.)

8         Plaintiff did not file his instant Application for Default Judgment until January 10, 2012,

9    nearly four months after the date ordered by the Court and Plaintiff failed to set the matter for

10   hearing. (Doc. 83).  Thus, the Court set Plaintiff's motion for default judgment for May 17, 2012

11   and ordered Plaintiff to serve Norberg with the motion and notice of hearing by May 2, 2012 and

12   file the proof of service with the Court at least 5 days before the hearing.  (Doc. 87).  On April 27,

13   2012, Plaintiff filed a Certificate of Service with the Court which indicated that he served a

14   "Proof of Service of Notice of Hearing on Application for Default Judgment by Court;

15   Memorandum of Points and Authorities" on John Norberg via U.S. mail.  This Court later

16   continued the hearing to May 24, 2012.  (Doc. 93).

17        At the May 24, 2012 hearing, the Court noted that Plaintiff's motion failed to set forth the

18   lawful measure of damages. Rather than seeking the damages that flowed from the wrongful loan,

19   Plaintiff sought the value of the wrongful loan and all payments made toward that loan.  (Doc.

20   94).  In essence, Plaintiff sought a windfall.  Counsel admitted this was not the proper damage

21   amount and requested additional time to provide evidence, in the form of an expert declaration,

22   which would set forth Plaintiff's lawful damages.  Plaintiff's additional evidence was due on July

23   6, 2012. (Doc. 94)

24        On July 5, 2012, Plaintiff filed a declaration seeking 90 days additional to submit

25   supplemental evidence.  (Doc. 95)  At that time, Counsel for Plaintiff reported that he had met

26   with various experts but had not yet been able to obtain the needed declarations.  Id.  The Court

27   granted Plaintiff's request, in part, and allowed Plaintiff an additional 60 days to file the

28   necessary declaration(s).  (Doc. 96).   Plaintiff failed to file any additional evidence in the time

1  frame ordered by the Court.  Based upon the evidence before this Court, the Court **GRANTS IN**

2  **PART** and **DENIES IN PART**, Plaintiff's motion for default judgment.

3  ## II.   Legal Standards for Default Judgment

4  When default was entered because "a party against whom a judgment for relief is sought

5  has failed to plead or otherwise defend," the party seeking relief may apply to the court for a

6  default judgment.  Fed.R.Civ.P. 55(a)-(b).   Upon the entry of default, well-pleaded factual

7  allegations regarding liability are taken as true, but allegations regarding the amount of damages

8  must be proven.   Pope v. United States, 323 U.S. 1, 22 (1944); *see also* Geddes v. United

9  Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).  In addition, "necessary facts not contained

10 in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps

11 v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine,

12 572 F.2d 1386, 1388 (9th Cir. 1978)).

13 Granting or denying a motion for default judgment is within the discretion of the Court.

14 Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).   The entry of default "does not

15 automatically entitle the plaintiff to a court-ordered judgment.   Pepsico, Inc. v. Cal. Sec. Cans,

16 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th

17 Cir. 1986).  The Ninth Circuit opined,

18
   > Factors which may be considered by courts in exercising discretion as to the entry of
19 > a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the
   > merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the
20 > sum of money at stake in the action, (5) the possibility of a dispute concerning
   > material facts, (6) whether the default was due to excusable neglect, and (7) the strong
21 > policy underlying the Federal Rules of Civil Procedure favoring decisions on the
   > merits.

22 Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of

23 default judgment is disfavored.  Id. at 1472.

24 ## III.  Plaintiff's Second Amended Complaint

25 According to Plaintiff, DeSilva, Norberg, and Financial sold Plaintiff the mortgage at

26 issue here.  (Dco. 41 at 4).  DeSilva was the loan officer, Defendant Norberg was the real estate

27 broker, and Financial was the lending institution.   (Id.)  Plaintiff alleges that Financial and

28 Norberg placed Plaintiff into a predatory loan with "toxic" terms to force him to refinance his

4

1   loan in the near future.  (Doc. 41 at 7).  Plaintiff contends that Norberg and Financial did this for

2   their financial gain.  (Doc. 41 at 7).

3       Plaintiff contends that on March 1, 2008, DeSilva approached Plaintiff, identified herself

4   as a loan officer for Financial and "solicited" him to refinance his residence.  (Doc. 41 at 8).

5   DeSilva told Plaintiff she could get him the "best deal" and the "best interest rates" available on

6   the market.  (Doc. 41 at 8, Doc. 83 at 3).

7       Plaintiff asserts that during the application process, he submitted accurate documentation

8   of his income, but alleges that DeSilva overstated his income on the loan application without his

9   knowledge or permission.  (Doc. 41 at 8; Doc. 83 at 3).  The loan documents stated his income as

10  $7,800 per month, when it was actually $4,800 per month.  (Doc. 41 at 8.; (Doc. 83 at 4).

11  Plaintiff claims DeSilva did this in order to qualify Plaintiff for the refinance, as he would not

12  have qualified at his actual income level.

13      Plaintiff alleges that DeSilva told him he could get 100% financing.  He later learned that

14  instead of a loan with 100% financing, DeSilva sold him a predatory loan: the loan for

15  $286,000.00 had an initial interest rate of 2.0% for one month, then adjusted to 9.95% "based

16  upon a 12 month MTA index) plus 2.9%, negatively amortized 115%."  (Doc. 41 at 8).  Plaintiff's

17  fully amortized payment was $2,083.43. (Id).

18      Plaintiff alleges DeSilva received $4,290 in yield spread premiums and $1,840 in

19  origination fees for Plaintiff's loan.  Plaintiff claims DeSilva told him that if the loan ever became

20  unaffordable, she would refinance it into an affordable loan.  (Doc. 41 at 9).

21      Before closing, Plaintiff did not receive any of the loan documents nor was he allowed to

22  review the documents.  Plaintiff alleges that the loan was subject to finance charges and contained

23  added costs that were not proper under the terms of the Note or law.  Plaintiff also claims

24  Norberg, as an agent of the Lender, should have provided Plaintiff with disclosures to inform him

25  of these terms.  Plaintiff further contends that he was not given the required copies of a proper

26  notice of cancellation. Plaintiff asserts that the specific facts regarding the loan were purposefully

27  hidden from him to prevent him from learning of the true nature of the loan.

28      Plaintiff completed the loan on the property on June 1, 2006.

## IV.   Application of <u>Eitel</u> Factors

Applying the factors articulated by the Ninth Circuit in <u>Eitel</u> to the facts above, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A.   Prejudice to Plaintiff

The first factor the Court considers is whether Plaintiff would suffer prejudice if default judgment is not entered.  *See* <u>Pepsico, Inc</u>., 238 F.Supp.2d at 1177.  Potential prejudice to a plaintiff militates in favor of granting a default judgment.  <u>Id.</u>  In general, where default has been entered against a defendant, a plaintiff has no other alternative by which to recover damages.  <u>Id.</u>; <u>J & J Sports Productions v. Rodriguez</u>, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010).   With the exception of Norberg, all of the previously named defendants have been dismissed by the Court.   Since Norberg has not appeared, it appears that Plaintiff has no opportunity to litigate the case on its merits and therefore has no other avenue by which he may recover damages.

### B.   Merits of Plaintiff's Claims and Sufficiency of the Complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together.  *See* <u>J & J Sports Productions v. Hernandez</u>, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).   The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover."  <u>Pepsico, Inc</u>., 238 F.Supp.2d at 1175 (citing <u>Kleopping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

#### 1.   Fraud

Plaintiff relies on California Civil Code section 1709 to support his claim that Defendant Norberg deceived Plaintiff and induced Plaintiff to proceed with a loan on terms that were not favorable to Plaintiff.  (Doc. 83 at 6).  Plaintiff contends that Norberg is liable for damages because Plaintiff would not have entered into the loan, if he had properly disclosed the terms of the loan.  (<u>Id</u>.)

Under California law, Plaintiff must show the following to establish fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

1    Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572.  The

2    burden to establish fraud is "heavy," Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir.

3    1990), because "when fraud is alleged, 'a party must state with particularity the circumstances

4    constituting fraud."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009), quoting Fed.

5    R. Civ. P. 9(b).

6          Here, Plaintiff makes the following general allegations:

7          . . . that Defendants Desilva, Norberg, and Financial, each made false representations
           to Plaintiff regarding material facts, including but not limited to, [sic] interest rate
8          attached to the Plaintiff's loan, financing options, availability of refinancing, and
           Plaintiff's qualification for this loan, at the inception of this transaction, designed to
9          fraudulently to induce Plaintiff to enter into this transaction

10   (Doc. 41 at 12).

11         However, the only specific statements and assurances about the loan set forth in the Second

12   Amended Complaint are attributed to DeSilva.  (Doc. 41 at 12-14.)  Despite this, Plaintiff's

13   Application for Default Judgment attributes DeSilva's statements to Norberg as well.  (Doc. 83).

14   Plaintiff's Application claims that because Defendant John Norberg was DeSilva's supervisor,

15   Norberg was working "directly with Defendant DeSilva" at the time DeSilva solicited Plaintiff to

16   refinance his home.  (Doc. 83 at 3).

17         The allegations for fraud against Defendant Norberg have not been plead with specificity

18   sufficient to meet the standards of Rule 9(b), because "[a]verments of fraud must be accompanied

19   by 'the who, what, when, where, and how' of the misconduct charged."  Kearns, 576 F.3d at

20   1124, citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1120 (9th Cir. 2003); *see also*

21   Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2004) (allegations of fraud must include "an

22   account of the time, place, and specific content of the false representations as well as the

23   identities of the parties to the misrepresentations") (internal quotation marks and citation

24   omitted).  Plaintiff's SAC fails to allege when or by what means Defendant Norberg made

25   knowingly false representations to Plaintiff.  He seems to set forth several assurances that were

26   made by Carol DeSilva, and merely attributes those same statements to Norberg based on his

27   supervisory role.  While Plaintiff alleges he suffered economic damages as a result of entering

28

7

1    into the loan, he has not set forth facts to demonstrate "justifiable reliance" or "intent to deceive"

2    by Defendant Norberg.  Thus, Plaintiff has failed to state a claim for fraud against Norberg.

3                              **2.      Breach of Contract**

4         To establish breach of contract under California law, Plaintiff must establish that there was

5    a contract under which Plaintiff performed or had an excuse for non-performance, and that

6    Norberg breached the contract, which resulted in damages to Plaintiff.  Wall Street Network, Ltd.

7    v. New York Times, Co., 164 Cal.App.4th 171, 178, 80 Cal.Rptr.3d 6 (2008) ("The standard

8    elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or

9    excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom.").

10        With respect to an oral contract to restructure the terms of a loan, the agreement must

11   embody definite terms, capable of enforcement, in order to constitute a legal contract. Wong v.

12   Am. Servicing Co., Inc., 2009 WL 5113516 *10 (E.D. Cal. Dec. 18, 2009) (citing Price v. Wells

13   Fargo Bank, 213 Cal.App.3d 465, 483 (1st Dist.1989) (noting that "the terms of a restructuring

14   agreement obviously may vary as widely as the terms of the original agreement"). "Preliminary

15   negotiations or an agreement for future negotiations are not the functional equivalent of a valid,

16   subsisting agreement." Wong, 2009 WL 5113516 *10. (quoting Kruse v. Bank of Am., 202

17   Cal.App.3d 38, 59, 248 Cal.Rptr. 217 (1st Dist.1988)). Moreover, the mere "understanding" that a

18   loan or mortgage would be restructured is insufficient to state a claim for breach of contract.

19   Wong, 2009 WL 5113516 *10.

20        Plaintiff does not allege that the terms of the contract were ambiguous. Rather, he claims

21   that Norberg wrongfully induced him to enter into a contract with unfair terms and failed to

22   provide adequate assistance during the formation of the contract. Specifically, Plaintiffs alleges

23   that Norberg breached the loan agreement with him when he misled Plaintiff as to the type of loan

24   and the monthly payments. Despite such allegations in the Application, Plaintiff fails to identify

25   any contract that obligated Norberg to conduct himself in a particular manner with respect to

26   these allegations. *See* Wong, 2009 WL 5113516 *10.  Accordingly, Plaintiff has failed to state a

27   claim for breach of contract claim against Norberg.

28   ///

### 3.    Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's SAC alleges the following:

> Defendants DESILVA, FINANCIAL, NORBERG, and each of them, breached the implied duty of good faith and fair dealing owed to Plaintiff by, among other things, performing acts and failing to act as alleged herein, and by failing to perform the duties specifically enumerated herein. Defendants further breached the duty of good faith and fair dealing by:
>
> > a.    Failing to pay at least as much regard to Plaintiff's interests as to Defendants' interests;
> >
> > b.    Failing to disclose to Plaintiff the true nature of the loan that is the subject of this action;
> >
> > c.    Failing to give Plaintiff the requisite notice and disclosures;
> >
> > d.    Directing Plaintiff into a toxic loan.

(Doc. 41 at 21).

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." Wong, 2009 WL 5113516 *11 (quoting Smith v. City & County of San Francisco, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." Wong, 2009 WL 5113516 *11 Fortaleza v. PNC Fin. Servs. Group, Inc., 2009 U.S. Dist. LEXIS 64624, at 15-16, 2009 WL 2246212 (N.D.Cal. July 27, 2009). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." Wong, 2009 WL 5113516 *11 (quoting Pasadena Live, LLC v. City of Pasadena, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004)).

Under California law, "no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d 1142, 1154-55 (E.D. Cal. 2010) (quoting Pension Trust Fund v. Federal Ins. Co., 307 F.3d 944, 955 (9th Cir.2002) (applying California law and citing Mitsui Mfrs. Bank v. Superior Court, 212 Cal.App.3d 726,

730, 260 Cal.Rptr. 793 (1989)). Further, the implied covenant "does not require parties to negotiate in good faith prior to any agreement." McClain, 159 Cal.App.4th at 799, 71 Cal.Rptr.3d 885.

This claim fails for the same reason the contract claim above fails. Plaintiff's SAC failed to plead facts to identify the existence of a valid contract between Plaintiff and Norberg other than the loan agreement, Plaintiff has failed to state that any of these alleged contractual duties were incorporated into the specific terms of the loan agreement, and Plaintiff has not alleged the existence of any "special relationship" between him and Norberg to invoke the implied covenant. *See* Lingad, 682 F. Supp. 2d at 1155.  Accordingly, Plaintiff has failed to state a claim against Norberg under the implied covenant of good faith and fair dealing.

### 4.  Negligence

The fifth cause of action in Plaintiff's SAC  alleges that all defendants Financial, Norberg, and DeSilva were negligent in directing Plaintiff into a loan that he may not have qualified for by industry standards, resulting in unnecessarily increased fees, which defendants knew were in excess of what Plaintiff could afford. (Doc. 41 at ¶138).

The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." Wong, 2009 WL 5113516 *6 (citing Mendoza v. City of Los Angeles, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998). "The question of the existence of a legal duty of care ... presents a question of law which is to be determined by the courts alone." First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir.2000). "Absent the existence of duty ..., there can be no breach and no negligence." Nichols v. Keller, 15 Cal.App.4th 1672, 1683, 19 Cal.Rptr.2d 601 (1993); Nymark *v.* Heart Fed. Savings & Loan Assn., 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (3d Dist.1991) ("The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence.") (citations omitted).

Plaintiff alleges that as Plaintiff's real estate broker, Norberg owed him a fiduciary duty. (Doc. 41 at ¶13).  Given the facts alleged by Plaintiff in his claim for Breach of Fiduciary duty,

1   Plaintiff has pled sufficient facts to support a claim for negligence against Norberg.  (See Breach
2   of Fiduciary Duty section, discussed below).

3                                    **5.   Breach of Fiduciary Duty**

4          "The elements of a cause of action for breach of fiduciary duty are: 1) the existence of a
5   fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage." Brewer v. Indymac
6   Bank, 609 F. Supp. 2d 1104, 1119-20 (E.D. Cal. 2009) (citing Pellegrini v. Weiss, 165
7   Cal.App.4th 515, 524, 81 Cal.Rptr.3d 387 (2008)).  A mortgage broker owes a fiduciary duty to
8   their client. See Cal. Civ. Code § 2079.24; Brewer, 609 F. Supp. 2d at 1119 (citing Zimmer v.
9   Nawabi, 566 F.Supp.2d 1025 (E.D.Cal.2008)). Under California law, a mortgage broker acts in a
10  fiduciary capacity that "not only imposes upon him the duty of acting in the highest good faith
11  toward his principal but also precludes the agent from obtaining any advantage over the principal
12  in any transaction had by virtue of his agency." Brewer, 609 F. Supp. 2d at 1119 (citing Wyatt v.
13  Union Mortgage Co., 24 Cal.3d 773, 782, 157 Cal.Rptr. 392, 598 P.2d 45 (1979) and Batson v.
14  Strehlow, 68 Cal.2d 662, 674-75, 68 Cal.Rptr. 589, 441 P.2d 101 (1968)). This duty obligates
15  brokers to "make a full and accurate disclosure of the terms of a loan to borrowers and to act
16  always in the utmost good faith toward their principals." Brewer, 609 F. Supp. 2d at 1119 (citing
17  Wyatt, 24 Cal.3d at 782, 157 Cal.Rptr. 392, 598 P.2d 45 and Rattray v. Scudder, 28 Cal.2d 214,
18  223, 169 P.2d 371 (1946)).  Accordingly, a broker is liable to his principal for secret profits.
19  Brewer, 609 F. Supp. 2d at 1119 (citing Roberts v. Lomanto, 112 Cal.App.4th 1553, 5
20  Cal.Rptr.3d 866 (2003)).

21         Accepting the allegations of Plaintiff's SAC as true, Norberg was Plaintiff's mortgage
22  broker and thus owed Plaintiff a fiduciary duty. (Doc. 41 at ¶13).  Plaintiff alleges that Norberg
23  breached his fiduciary duty by obtaining a loan for him with unfavorable terms that he could not
24  afford, by failing to disclose the negative consequences of the loan, and securing secret profits.
25  (Doc. 41 at ¶150).  Plaintiff further alleges he suffered harm as a proximate result of Norberg's
26  breach. (Id. at ¶156). Finally, Plaintiff alleges that by deliberately breaching his fiduciary duty,
27  Norberg acted with malice, fraud, wantonness, oppression, and entire want of care to Plaintiff's

28

1    rights.  (Id. at ¶157).  As such, Plaintiff has sufficiently alleged that Norberg intentionally and

2    fraudulently breached fiduciary duties owed to him.

3                     **6.  California Business and Professions Code §17200, et seq.**

4           Under §17200, unfair competition includes any "unlawful, unfair, or fraudulent business

5    act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which

6    a claim may be established under §17200.  <u>Daro v. Superior Court</u>, 151 Cal.App.4th 1079, 1093

7    (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only

8    meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair

9    competition"); <u>Lozano v. AT&T Wireless Servs.</u>, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach

10   prong . . . is a separate and distinct theory of liability").  Further, a claim under § 17200 must rest

11   on a violation of another law.  <u>Farmers Ins. Exch. v. Superior Court</u>, 2 Cal.4th 377, 383, 6

12   Cal.Rptr.2d 487, 826 P.2d 730 (1992).  Here, Plaintiff claims Norberg's "negligence, breach of

13   fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair

14   dealing" constitute unlawful, unfair, and/or fraudulent business under California Business &

15   Professions Code § 17200.  (Doc. 41 at ¶166).

16                               a.   Unlawful act or practice

17          Actions prohibited by § 17200 include "any practices forbidden by law, be it civil or

18   criminal, federal, state, or municipal, statutory, regulatory, or court-made."  <u>Saunders v. Superior</u>

19   <u>Court</u>, 27 Cal.App.4th 832, 838-39, 33 Cal.Rptr.2d 438 (1994).  Thus, the "unlawful" prong

20   requires an underlying violation of law.  <u>Krantz v. BT Visual Images</u>, 89 Cal.App.4th 164, 178,

21   107 Cal.Rptr.2d 209 (2001).  Here, as detailed above, Plaintiff has established Norberg violated

22   breached a fiduciary duty owed to Plaintiff.

23                               b. Unfair act or practice

24          A claim under the "unfair" prong requires "conduct threatening incipient violation of

25   antitrust laws, or violates the policy or spirit of those laws . . . , or otherwise significantly

26   threatens or harms competition."  <u>Cal-Tech Communications v, Inc. v. Los Angeles Cellular</u>

27   <u>Telephone Co.</u>, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).  In this case,

28   Plaintiff has not alleged a violation of antitrust laws.  Likewise, he has not shown the actions of

                                             12

1  Norberg threatened or harmed competition.

2                          c. Fraudulent act or practice

3       A "fraudulent" act under § 17200 is "one which is likely to deceive the public," and "may

4  be based on misrepresentations . . . which are untrue, and also those which may be accurate on

5  some level, but will nonetheless tend to mislead or deceive." McKell v. Washington Mutual, Inc.,

6  142 Cal.App.4th 1457, 1474, (2006).  Thus, the term "fraudulent" under §17200 "does not refer

7  to the common law tort of fraud," Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th

8  638, 645 (Ct. App. 2008), but still requires allegations that the misrepresentation was directly

9  related to injurious conduct, and that the claimant actually relied on the alleged misrepresentation.

10 In re Tobacco II Cases, 46 Cal.4th 298, 36-27 (2009).  Nevertheless, claims based upon the

11 "fraudulent" prong of §17200 remain subject to the heightened pleading requirements of Rule

12 9(b).  Kearns, 567 F.3d at 1124-25; Meridian Project Sys., 404 F.Supp.2d at 1219.  Because

13 Plaintiff failed to plead the circumstances surrounding fraud with particularity, his claim for

14 fraudulent practices under § 17200 fails as well.

15                    **C.  Sum of Money at Stake**

16      In considering this factor, the Court "must consider the amount of money at stake in

17 relation to the seriousness of Defendant's conduct."  Pepsico, Inc., 238 F.Supp.2d at 1176.  Here,

18 Plaintiff prays for judgment in the amount of $429,456.34.  Plaintiff breaks down this amount as

19 follows:

20       1)      $374,648.64 for compensatory damages including,

21               a.  $286,000.00 for the amount of the loan;

22               b.  $5,093.59 for out of pocket closing costs paid by Plaintiff;

23               c.  $8,887.45 for "out of pocket costs Defendants DeSilva and Norberg received

24                   from the loans sold to Plaintiff;

25               d.  $74,016.60 in payments made by Plaintiff on the current loan;

26               e.  $651 in pre-payment penalties associated with the prior loan Plaintiff

27                   refinanced

28       2)      $410.00 for costs of litigation (including filing fee and fee for service on

                                             13

1    defendant;

2    3)    $5005.00 for attorney fees; and

3    4)    $49,392.70 for pre-judgment interest

4    Given the substantial amount of money at stake, this factor weighs against the entry of

5    default judgment.  *See, e.g.,* Joe Hand Promotions v. Streshly, 655 F.Supp.2d 1136 (S.D. Cal.

6    2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J &

7    J Sports Productions v. Cardoze, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9,

8    2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling

9    $114,200); *but see* Hernandez, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved

10   contemplate such an award under certain circumstances," and the factor did not weigh against

11   entry of default judgment).

12                    **1)  Prejudgment Interest**

13   The Prayer for Damages alleged in Plaintiff's SAC does not request pre-judgment interest.

14   Therefore Plaintiff cannot recover any amount for pre-judgment interest.  *See* Landstar Ranger,

15   Inc. v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010) (citing Fed.R.Civ.Proc.

16   54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded

17   in the pleadings") and Silge v. Merz, 510 F.3d 157, 160-61 (2d Cir.2007) (affirming the denial of

18   prejudgment interest in connecting with a default judgment where plaintiff did not expressly pray

19   for prejudgment interest in the complaint, and stating that, "[b]y limiting damages to what is

20   specified in the 'demand for judgment,' [Rule 54(c) ] ensures that a defendant who is considering

21   default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that

22   amount, and then default without the need to hire a lawyer").

23                  **2)  Compensatory Damages, Attorney's Fees, and Costs**

24   California law explains Plaintiff's measure of damages as follows:

25   For the breach of an obligation not arising from contract, the measure of damages,
     except where otherwise expressly provided by this code, is the amount which will
26   compensate for all the detriment proximately caused thereby, whether it could have
     been anticipated or not.
27

28   Cal. Civ. Code § 3333 (West).

1    Contrary to Plaintiff's request for relief, the Court finds the proper measurement of
2  damages for Norberg's breach of fiduciary duty is the difference paid by Plaintiff due to the
3  increased interest rate as calculated over the entire 30 year term of the loan.  *See* <u>Smith v. Home</u>
4  <u>Loan Funding, Inc.</u>, 192 Cal. App. 4th 1331, 121 Cal. Rptr. 3d 857 (2011), as modified on denial
5  of reh'g (Mar. 28, 2011).  To award Plaintiff the full value of the loan that Plaintiff received, plus
6  the payments he made on the new loan would serve as a complete windfall to Plaintiff.

7    Based upon the Closing Documents, it appears Plaintiff's prior loan had an interest rate of
8  8.625%, but Plaintiff has not provided the Court with the monthly payment he had prior to the
9  loan at issue.   Because Plaintiff has failed to produce evidence of the increased amount Plaintiff
10  paid in interest over the term of the loan due to the new interest rate(s), if any, the Court lacks
11  evidence to support any award of damages to Plaintiff for out-of-pocket expenses related to his
12  payments under the new loan. To award Plaintiff the full value of the loan that he received, plus
13  the payments he made on the new loan would serve as a windfall.

14    Additionally, Plaintiff alleges expenses of $5,093.59 for out of pocket closing costs paid
15  by Plaintiff; however, the Court is unable to locate this amount in the closing documents provided
16  to the Court.  (Doc. 83-1).  Likewise, the Court has identified the $4,290 yield spread premium,
17  but has not been able to locate the $8,887.45 for "out of pocket costs Plaintiff claims Defendants
18  DeSilva and Norberg received from the loans sold to Plaintiff."  (<u>Id</u>. at 2-4, 7 and 10).  Plaintiff
19  also claims $651 in pre-payment penalties associated with the prior loan Plaintiff refinanced;
20  however the closing documents only seem to indicate $350 for prepayment penalty (<u>Id</u>. at 6).
21  Plaintiff was given an opportunity to supplement his evidence in order to clarify these issues and
22  has failed to do so.  (Doc. 94 and 96).  With regard to the out-of-pocket expenses described
23  above, the evidence before this Court only supports an award of $350 for the pre-payment
24  penalty.

25    Finally, Plaintiff's request for costs of litigation at $410.00 (including filing fee and fee
26  for service) on Defendant appears appropriate.  On the other hand, Plaintiff's prayer for relief,
27  which requests $5005.00 for attorney fees (for 14 hours at $350.00 per hour) is not reasonable in
28  light of the failure detailed in footnote 1 above and the extremely limited success in this case due

1   to counsel's lack of diligence. Counsel's request for fees that are more 10 times the amount of the

2   recovery is unconscionable especially in light of the fact that the size of the recovery is due, it

3   appears, to counsel's mismanagement of this case.  Thus, the Court **DENIES** the request for fees.

4                **D.   Possibility of Dispute Concerning Material Facts**

5         The Court also considers the possibility of dispute as to any material facts in the case.

6   Generally, where a defendant is in default there is little possibility of dispute concerning material

7   facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's

8   Complaint as true and (2) though properly served, the defendant has not made any effort to

9   challenge the Complaint or otherwise appear in this case.  *See* <u>Pepsico, Inc</u>., 238 F.Supp.2d at

10  1177.  Therefore, this factor weighs in favor of granting default judgment.

11               **E.   Whether Default Was Due to Excusable Neglect**

12        Generally, the Court will consider whether Mr. Norbert's failure to answer is due to

13  excusable neglect.  *See* <u>Eitel</u>, 782 F.2d at 1472.  Here, Mr. Norbert was properly served with the

14  Summons and Complaint.  (Doc. 61-62).  Moreover Norberg received notice of the initial hearing

15  on Plaintiff's motion for default judgment and did not respond.  (Doc. 92).   Given these

16  circumstances, it is unlikely that Norberg's failure to answer, and the resulting defaults entered by

17  the Clerk of Court, was a result of excusable neglect.  See <u>Shanghai Automation Instrument Co.,</u>

18  <u>Ltd. v. Kuei</u>, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because

19  the defendants "were properly served with the Complaint, the notice of entry of default, as well as

20  the papers in support of the instant motion").  As a result, this factor does not weigh against

21  default judgment.

22               **F.   Policy disfavoring default judgment**

23        As noted above, default judgments are disfavored because "[c]ases should be decided on

24  their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472.  Mr. Norbert's failure to

25  answer the Complaint makes a decision on the merits somewhat impractical.  However, the policy

26  underlying the Federal Rules of Civil Procedure favors decisions on the merits and therefore

27  weighs against Plaintiff.

28      **VI.  Conclusion**

Given the issues discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's request for entry of default judgment against John Norbert, individually, and awards the following:

1.    Plaintiff's request for the full value of the loan and the payments made on the loan is **DENIED**;

2.    Plaintiff is **AWARDED** costs of litigation in the amount of $410.00;

3.    Plaintiff's request attorneys' fees in the amount of $5005.00 is **DENIED**;

4.    Plaintiff is **AWARDED** reimbursement for a pre-payment penalty in the amount of $350.00; and

5.    Plaintiff's request for pre-judgment interest is **DENIED**.

IT IS SO ORDERED.

Dated:   __September 12, 2012__                 _____/s/ Jennifer L. Thurston_____
                                                                    UNITED STATES MAGISTRATE JUDGE

17